**Randolph M. HOWES, Janice Kinchen Howes, and Arrow International, Inc., Appellants,**

**v.**

**MEDICAL COMPONENTS, INC., and American Hospital Supply Corp., Appellees.**

**Appeal No. 86–1157.**

United States Court of Appeals, Federal Circuit.

March 19, 1987.

---

Albert E. Fey, Fish & Neave, New York City, argued for appellants. With him on the brief were Robert C. Morgan, Denise L. Loring and Irene J. Frangos. Also on the brief were Thomas A. Masterson and Richard F. McMenamin, Morgan, Lewis & Bockius, of Philadelphia, Pa.

Jerome F. Fallon, Tilton, Fallon, Lungmus & Chestnut, Chicago, Ill., argued for appellee American Hosp. With him on the brief was John W. Chestnut.

William H. Elberg, of Jenkintown, Pa., argued for appellee Medical Components.

Before FRIEDMAN and RICH, Circuit Judges, and BALDWIN,* Senior Circuit Judge.

RICH, Circuit Judge.

This appeal is from a final judgment of the United States District Court for the Eastern District of Pennsylvania granting summary judgment of non-infringement of claim 7 (the only claim in suit) of U.S. Patent No. 4,072,146 (the Howes patent, now reissue No. Re. 31,873) for a "Venous Catheter Device" to Medical Components, Inc. (MedComp) and American Hospital Supply Corp. (AHS), 623 F.Supp. 164. We vacate and remand.

*Background*

The Howes patent discloses and claims a triple lumen infusion catheter for insertion into a vein. A catheter is basically a tube which is inserted into the body for one or more purposes, such as draining fluids, injecting drugs or nutrients, or measuring blood pressure within a vein or artery. A triple lumen catheter has three lumens or passageways, each of which is capable of

* The Honorable Phillip B. Baldwin assumed Senior Circuit Judge status effective November 25, 1986.

carrying a different fluid or performing a different diagnostic function.

The patentee, Dr. Randolph Howes, first applied for his patent on September 8, 1976. The application disclosed a "venipuncture" device which included a hollow needle to insert a catheter into a vein and a triple lumen venous catheter. Original claims 1–4 and 9 were directed to the venipuncture device combination including the needle. Claims 5–8 were directed to the catheter itself.

The patent specification illustrates two ways to make the catheter—by placing separate tubes within the catheter tube as in Fig. 3 of the patent, and by forming elongated openings in the catheter body material as in Fig. 5. These figures, reproduced below, together with Fig. 1 showing how the catheter is used, each show the distal end portion of the catheter (i.e., the portion placed within the body or blood vessel). As shown in both of the figures, one of the lumens extends to the distal end of the catheter tube. The other lumens exit through side openings in the catheter tube at points spaced both radially from one another and longitudinally along the tube.

FIG I

FIG.3

FIG.5

The only amendments to the claims as originally filed were to specify a catheter with a distal end portion generally circular in cross-section and having a uniform outer diameter for insertion into a vein and that at least one of the lumens be used for infusing fluids into the blood stream.

Amended claim 7 reads as follows (with the added claim language emphasized):

7. A venous catheter device including an elongated, flexible catheter tube *provided with a distal end portion generally circular in cross-section and having a uniform outer diameter constructed for insertion into and capable of being*

*fed longitudinally of a vein,* a plurality of independent lumens extending freely through said catheter tube, each of said lumens having a distal terminus adjacent the distal terminus of the catheter and spaced from each other, one of said lumens having its distal end substantially coextensive with the distal end of said tube, the other of said lumens exiting at lateral openings in said tube and being joined thereto, *at least one of said lumens providing means for infusing fluids into the blood stream,* the proximate ends of the lumens extending beyond the proximate end of said catheter tube and being fitted with a lumen adapter for connection to independent fluid devices.

The patent issued on February 7, 1978.

Dr. Howes filed a reissue application on January 19, 1983, after being apprised of additional prior art which had not been considered by the Patent and Trademark Office (PTO) during the original prosecution. AHS participated in the reissue as a protestor in accordance with PTO rules.

The examiner initially rejected all of the original claims. After an interview between Dr. Howes' patent attorney and the examiner, Howes cancelled all the claims except claim 7 and added a new set of claims based on claim 7. The patent was reissued as Patent No. Re. 31,873 on April 30, 1985, with claim 7 of the original patent unchanged and including the new claims 11–14 based on claim 7.

### The Proceeding Below

Appellants, Dr. Howes, Janice Howes, a part owner of the patent, and Arrow International, Inc. (Arrow), sued AHS and MedComp for infringement of claim 7 of the original Howes patent. Arrow holds an exclusive license under the patent and manufactures and sells triple lumen catheters made like the one illustrated in Fig. 5. MedComp and AHS also make and sell catheters similar to the one in Fig. 5. None of the parties has ever made commercially a catheter with the "tubes-within-a-tube" structure of Fig. 3. Also unlike the catheter shown in the patent drawings, MedComp's and AHS's devices, as well as Arrow's, have a tapered distal tip for easier insertion into the vein.

Since the reissue patent issued after the suit was filed, appellants moved to amend their complaint to charge infringement of the reissue claims. The district court, however, entered summary judgment of non-infringement on claim 7 of the original patent. Both AHS and MedComp discussed the reissue in their motions for summary judgment, and the court referred to it in its July 22 order, but the complaint was never amended.

In granting MedComp's motion for summary judgment, the district court first determined that catheters with tapered ends like those of MedComp and AHS were within the scope of claim 7. The court found that Howes added the phrase "uniform outer diameter" during prosecution of the original patent to distinguish over prior art catheters which had protuberances along their lengths and not to exclude catheters with tapered tips.

The district court then held that claim 7 was limited to catheters made according to Fig. 3 and did not cover the embodiment of Fig. 5. To reach this conclusion, the court focused on the words "joined" and "freely" as used in claim 7. These words do not appear in any other of the original claims.

The court interpreted "joined" to mean "fastened," as in Fig. 3, in which the inner lumens are physically fastened to the outer tube. The court noted that, in connection with Fig. 3, the specification explains that the lumens may be joined to the catheter tube using an adhesive or by fusing. In contrast, the lumens in Fig. 5 are already attached to the outer casing. Thus, the court concluded that "the more reasonable interpretation of 'joined' appears to be the fastening required in figure 3 of the patent claim."

As to the word "freely" in claim 7, the court found that it means the lumens are "independent" of each other as they extend down the tube as in Fig. 3. In Fig. 5, however, the lumens are not independent but are part of the same piece of material.

Based solely on these interpretations, the district court held that the MedComp catheter did not infringe claim 7. The district court subsequently granted AHS's motion for summary judgment, stating that it did so on the same grounds relied on in granting MedComp's motion.

## ISSUE

The sole issue is whether the district court erred in holding that there were no genuine issues of material fact and that MedComp and AHS were entitled to judgment as a matter of law that their accused triple lumen catheters did not infringe claim 7 of the Howes patent.

This issue turns on the subsidiary issue of whether the district court erred in holding, as a matter of law, that claim 7 must be limited to a catheter made according to Fig. 3 of the patent and cannot be infringed by catheters made according to Fig. 5.

## OPINION

### A. *Summary Judgment*

Summary judgment under Rule 56, Fed.R.Civ.P., is appropriate in patent cases as in any other case where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Moeller v. Ioenetics, Inc.*, 794 F.2d 653, 656, 229 USPQ 992, 994 (Fed.Cir.1986). In deciding such motions, all doubt respecting the presence or absence of factual issues must be resolved in favor of the party opposing summary judgment. *Petersen Mfg. Co. v. Central Purchasing*, 740 F.2d 1541, 1546, 222 USPQ 562, 565–66 (Fed.Cir. 1984). Even if the district court properly finds that no genuine issue of material fact was raised, reversal or vacating is still required if the court engaged in faulty legal analysis in applying the law to the facts. *See Palumbo v. Don-Joy Co.*, 762 F.2d 969, 226 USPQ 5, 7 (Fed.Cir.1985). Here, the district court both "engaged in faulty legal analysis" and failed to recognize the existence of genuine issues of material fact.

### B. *Claim Construction*

Claim construction is a question of law and the mere existence of a dispute as to that legal issue does not preclude summary judgment. *Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651, 654, 223 USPQ 706, 707 (Fed.Cir.1984). When a claim is in dispute, however, it is always necessary to look at certain extrinsic evidence, namely, the specification, the prosecution history, and the other claims. *See, e.g., Moeller*, supra, 794 F.2d at 656, 229 USPQ at 994; *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867, 228 USPQ 89, 93 (Fed.Cir.1985). Although claim construction (what its scope is) is a legal conclusion, underlying factual disputes may arise which preclude summary judgment. *Moeller*, supra, 794 F.2d at 657, 229 USPQ at 995. If complex scientific principles are involved or expert testimony is needed to explain a disputed term, for example, then an underlying factual question may arise which makes summary judgment improper. *See, e.g., id.; Palumbo*, supra, 762 F.2d at 974, 226 USPQ at 8.

The disputed terms in claim 7 on which the district court based its judgment, however, are not technical terms or terms of art—they are the words "joined" and "extending freely" as used to describe the structure of the lumens within the catheter tube. These terms alone do not have a special meaning to those skilled in the art of catheter construction which would raise specific questions of fact. In fact, all of the terms of claim 7 are fairly common, ordinary words, other than the term "lumen" perhaps, and this term is clearly defined in the patent specification. In this respect, the district court could have properly construed the claims as a matter of law without resort to expert evidence.

But in its attempt to dispose of this case, the district court adopted an interpretation of claim 7 which, as it stands, is inconsistent with the specification. We note that claim interpretation in the light of such evidence remains a question of law, *see, e.g., Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1569–71, 219 USPQ 1137, 1140–43 (Fed.Cir.1983), and hence, we

review this aspect of the judgment as such, free of the clearly erroneous standard which pertains to factfinding, *see D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1573, 225 USPQ 236, 238 (Fed.Cir.1985). But because of what we also perceive to be genuine issues of material fact surrounding the reissue of the patent, which the district court never reached, we do not offer our own interpretation of claim 7, leaving that instead to the district court on remand.

### 1. *The District Court's Interpretation of Claim 7: "Joined" and "Freely"*

■ In reading the language of claim 7 to cover only Fig. 3, the district court interpreted the words "joined" and "freely" as limiting the lumens in that claim to tubes. The specification, however, clearly defines lumens as including both "individual tubes or elongated passageways formed in a body." Simply put, we do not see how the words "joined" and "freely" alone can so limit the claimed invention when the specification makes clear that embodiments in Fig. 3 and Fig. 5 are two ways to embody the same claimed invention.

Looking more closely at the district court's reasoning, the court apparently did not recognize that the lumens in Fig. 5 are defined as being distinct from the catheter wall. Instead, the court stated that the lumens in Fig. 5 "are not independent of the outer casing," and because they are not independent, the court reasoned, the lumens need not be "joined" to it. The term "joined," however, is used in claim 7 in a descriptive sense to define the structural relationship between the lumens and the openings in the catheter wall, not to specify a way to make the catheter. If the lumens are properly seen as either tubes or passageways, as the specification says, then the term "joined" must mean in some sense "connected." Although gluing or fusing is one way in which the two may be connected, as is shown in Fig. 3, it is not the only way. The Fig. 5 lumens can be "joined" to the openings simply by making a hole in the outer sheath.

The district court similarly misconstrued the "extending freely" language of claim 7. The court concluded that "freely" means that the lumens are "independent" of each other as they extend down the tube, and not just that they are unobstructed as the appellants contend. Here again, the district court's reasoning is flawed by its misconception of the term "lumen." The lumens of Fig. 5, which are defined as passageways or openings, are also denoted in the patent as separate elements. The court in effect merged these elements with the outer sheath and the inner wall shown in Fig. 5. When properly viewed as consisting of the passageways through the catheter, and not the surrounding material, the only reading of "freely" that makes sense is "unobstructed."

This definition of "freely" is not redundant, however, as the district court suggests, because a lumen is *not* by definition unobstructed. Well-known prior art catheters contain fluid passages which are blocked at their ends with balloons or are obstructed by wires or electrical devices. These passages are known, and are specifically referred to, as "lumens."

Both AHS and MedComp make much of the fact that only claim 7 of the original claims contains the words "joined" and "freely." Although this might seem significant, on further examination of the other claims, it adds no support to the appellees' position. Throughout the claims, different language is used to refer to the same structure. For example, the lumens of original claims 1–6 and 9–10 are described variously as "fluid passages," "independent lumens," and "elongated flexible lumens," all of which MedComp admits in its brief cover both Figs. 3 and 5. MedComp further acknowledges that claim 4 which contains the language "elongated, flexible lumens encased within said catheter tube" applies to both Figs. 3 and 5. Yet, the word "encased" appears only in claim 4 of the original claims and in the specification only in connection with Fig. 3.

These minor variations in claim language are not enough to reduce the claimed invention to only one of the disclosed embodi-

ments without some expressed intent to do so. We cannot see into the mind of the draftsman, but after reading the specification, it seems apparent that if claim 7 was originally intended to cover only Fig. 3, it would have said "tubes." Instead, by using the more broadly defined term "lumen," we can surmise that the claim language was intended to cover both structures.

Of course, during the prosecution of a patent, claim language may take on new meanings, possibly different from that which was originally intended. Suffice it to say, however, that the district court's interpretation, as far as it went, was wrong.

### 2. *Prosecution History of the Reissue*

■ As set out previously, the Howes patent was reissued during the pendency of this lawsuit with claim 7 as the only claim carried over from the original patent. The district court, however, granted summary judgment on claim 7 of the original patent and did not address the reissue.

Under the provisions of the reissue statute, 35 U.S.C. § 252, surrender of the original patent upon reissue does not affect any pending action or abate any cause of action to the extent that the claims of the original and reissue patents are identical. As explained in *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 221 USPQ 568 (Fed.Cir.1984), Congress intended this section to ameliorate the harsh effect of a patent's surrender, which, prior to the adoption of the rule now incorporated in § 252, required dismissal, for failure to state a cause of action, of any action filed before the patent was surrendered. *Id.* at 827, 221 USPQ at 574; *see also Shull Perforating Co. v. Cavins*, 94 F.2d 357, 369, 36 USPQ 217, 229–30 (9th Cir.1938).

But whether the suit is denominated as for infringement of the original claim or of the identical reissue claim, it is still necessary to look at the prosecution history of the reissue in order to construe the disputed claim. *See, e.g., Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452–53, 227 USPQ 293, 296 (Fed.Cir.1985).

Both sides have raised questions as to the effect of prosecution history of the reissue, in the court below and on this appeal, and both differ greatly in their account of what happened during that proceeding. Because of its erroneous legal interpretation of claim 7, however, the district court never even considered the effect of the reissue proceedings on the scope of this claim.

The circumstances surrounding the reissue are somewhat murky at best. Appellants assert that the prosecution history of the reissue contains nothing to suggest limiting claim 7 to Fig. 3. According to appellants, the other claims were cancelled after the examiner's initial rejection in order to limit claim coverage of the reissue to a catheter having three or more lumens.

From the record, it is impossible to tell what transpired during the interview—apparently only the examiner and Howes' attorney were present. In support of their argument, however, appellants refer to the examiner's report of the interview which states:

> Counsel will file new supplemental amendment focusing on orig. claim 7 (now claim 19) wherein 3 lumens are present within the catheter. Amendment will add new claims based on original cl. 7 and will cancel remaining cls. with provision to later prosecute those cls.

Furthermore, in the notice of allowance of the reissue, claim 19 was cancelled as superfluous since original claim 7 was "essentially the same, i.e., calling for 3 lumens with 3 separate openings to exterior of the tube."

MedComp asserts that appellants' argument that the only effect of the reissue was to limit the catheter to three lumens is unbelievable. Claim 7 is not the only claim whose terms recite three lumens. Original claims 2 and 4, which are narrower than claim 7 because they include the insertion needle, also require a catheter with three lumens. Rather, MedComp contends that Howes cancelled all the claims, except claim 7, because the prior art was filled with multi-lumen catheters having structures similar to that of Fig. 5. The one thing not shown in the art of record was a

multi-lumen catheter having the "tubes-within-a-tube" construction of Fig. 3.

In support of its position, MedComp refers to U.S. Patent No. 1,696,018 to *Schellberg*, cited by the examiner during the reissue, as an example of the state of the art of multi-lumen structures. *Schellberg* shows a double lumen device, the lumens being formed as passages in a tube in a manner similar to that of Fig. 5 of the Howes patent. MedComp also points to an article describing the Cournand catheter, also made officially of record in the reissue, which is a multi-lumen catheter apparently constructed like Fig. 5. The text of the article states that the catheter is "divided internally into two channels" which are separated by a rigid partition. One of these lumens terminates at the distal tip, while the other terminates at a point which is spaced from the tip.

In the end, the record is simply incomplete with too many unresolved fact issues to properly construe the scope of claim 7. As this court explained in *Palumbo*, supra, 762 F.2d at 976–77, 226 USPQ at 10:

> At the very least, if ambiguity is thought to surround the prosecution history in this case, that could give rise to a question of fact underlying the legal question of claim construction. In light of the complexity of the proceedings before the examiner, and the need under the facts of this case for a careful interpretation of those proceedings by one of ordinary skill in the art, explanatory testimony could aid the trial court (if it had doubt) in ascertaining the scope of the [claim].

Under the circumstances of this case, summary judgment should not have been granted.

### 3. *"Uniform Outer Diameter"*

■ MedComp continues to adhere to its interpretation of the phrase "uniform outer diameter" in claim 7 as an alternative basis for affirming the judgment below. MedComp contends that because this limitation was added during prosecution, Howes is estopped from claiming a catheter with a tapered distal tip, wherefore its catheter does not infringe. The district court rejected this argument as a basis for granting summary judgment, holding instead that it was reasonable to include tapered catheters within the scope of claim 7.

If one thing is clear from the prosecution history of the patent, it is that Howes added the limitation of a uniform outer diameter at the distal end of the catheter tube only to distinguish the catheter in *Bielinski*, U.S. Patent No. 3,437,088, which had protuberances along its length. Some additional gloss was placed on this language by Howes' patent attorney in distinguishing the Cournand catheter during reissue, but Cournand was distinguished on a number of grounds. Significantly, the non-uniformity in the Cournand catheter body is not at its tip—it begins halfway along the length of the catheter body. At most, Howes' argument to the examiner can be taken as surrendering from claim coverage a catheter with size changes along its insertion length, not at its tip.

### C. *Other Errors*

■ It is a truism that this court reviews judgments, not opinions, *see, e.g.*, *Chore-Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774, 781, 218 USPQ 673, 677 (Fed.Cir.1983), but the district court's July 22, 1985, summary judgment order contains several misstatements of law which should not be left without comment.

The district court in several places appears to confuse claim allowance with infringement of third party patents, stating that "Howes was compelled to amend his patent application to avoid infringing prior art patents" and that the Howes patent was allowed because "small but significant differences are enough to prevent infringement." In discussing the doctrine of equivalents, the court seems equally confused in its observation that although the differences between MedComp's catheter and Howes catheter were not great, "small changes have been enough to distinguish new catheters from prior art."

It is impossible to deduce whether these obvious misstatements contributed to the

erroneous judgment below. *Cf. Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co.*, 730 F.2d 1452, 1458, 221 USPQ 481, 485 (Fed.Cir.1984) ("language in an opinion ... may indicate that harmful errors of law produced an erroneous conclusion"). They do, however, betray a lack of familiarity with certain fundamentals of patent law which should be remedied on remand.

## CONCLUSION

We hold, therefore, that the district court erred as a matter of law in construing claim 7 as limited to Fig. 3 of the Howes patent based on its interpretation of the words "joined" and "freely" as contained therein. In doing so, the district court also failed to recognize genuine issues of material fact surrounding the reissue of the patent which make summary judgment inappropriate in this case. The judgment of non-infringement of claim 7 by MedComp and AHS is *vacated* and the case is *remanded* for further consideration consistent with this opinion.

VACATED AND REMANDED.