829 F.2d 43
 Unpublished disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
INSTA-FOAM PRODUCTS, INC., Plaintiff/Appellee,
v.
UNIVERSAL FOAM SYSTEMS, INC., Defendant/Appellant.
 Appeal No. 86-1450.
 United States Court of Appeals, Federal Circuit.
 Aug. 26, 1987.
 
 Before DAVIS, Circuit Judge, JACK R. MILLER, Senior Circuit Judge, and ARCHER, Circuit Judge.
 ARCHER, Circuit Judge.
 
 DECISION
 
 1
 Universal Foam Systems, Inc. (Universal) appeals from a judgment of the United States District Court for the Eastern District of Wisconsin holding reexamined United States Patent No. 3,784,110 ('110), issued to William R. Brooks and assigned to Insta-Foam Products, Inc. (Insta-Foam), not invalid and infringed. We affirm-in-part, vacate-in-part and remand.
 
 OPINION
 1. Inequitable Conduct
 
 2
 Universal contends that Insta-Foam's '110 patent, relating to a mixing and dispensing gun having a replaceable nozzle, is unenforceable due to inequitable conduct because of the failure to disclose to the United States Patent and Trademark Office (PTO) the fact that the foam gun described in United States Patent No. 3,633,795 ('795) had been on sale more than one year prior to the filing date of the application for the '110 patent. The '795 patent was issued to Brooks approximately ten months prior to his application for the '110 patent and was also assigned to Insta-Foam. Although Universal concedes that Insta-Foam disclosed the '795 patent and the commercial success of the gun described therein to the examiner, it points out that the '795 patent did not constitute prior art, whereas the foam gun that was sold (herein referred to as the "sale gun") did constitute prior art. 35 U.S.C. Sec. 102(b) (1982).
 
 
 3
 The defense of inequitable conduct requires proof by clear and convincing evidence of the materiality of nondisclosed references and of the intent of the patentee to deceive or mislead the PTO. J.P. Stevens & Co. v. Lex Tex Ltd., 747 F.2d 1553, 1559-60, 223 USPQ 1089, 1092 (Fed.Cir.1984). Proof of deliberate scheming is not required; gross negligence is sufficient. Id. Both materiality and intent are factual issues subject to the clearly erroneous standard of review. J.P. Stevens & Co., 747 F.2d at 1562, 223 USPQ at 1094.
 
 
 4
 Although the district court acknowledged that the inequitable conduct issue was before it for decision, it unfortunately failed to address this issue, and to make the necessary underlying factual determinations, in its memorandum opinion. Because we, as an appellate court, lack the power to engage in fact-finding, we must remand for appropriate findings to be made. Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 872-75, 228 USPQ 90, 97-99 (Fed.Cir.1985), (quoting ACS Hospital Systems, Inc. v. Montefiore Hospital, 732 F.2d 1572, 1578, 221 USPQ 929, 933 (Fed.Cir.1984) ("Where the trial court fails to make findings [on validity], the judgment will normally be vacated and the action remanded....")).
 
 2. Validity
 
 5
 Universal makes several arguments on validity. It asserts that the district court "paid mere lip service to the required validity analysis set forth in Graham v. John Deere Co., 383 U.S. 1, 148 USPQ 459 (1966), in that the trial judge never gave meaningful consideration to the scope and content of the prior art...." Universal argues next that the district court was "influenced by differences between the prior art and Insta-Foam's gun that are not recited in the claims" of the '110 patent. Finally, Universal contends that the court's validity analysis was flawed due to its erroneous conclusion that the examiner had considered the sale gun.
 
 
 6
 This court must accept the district court's findings of fact relating to the Graham inquiries unless they are shown to be clearly erroneous or predicated on an improper legal foundation. Dennison Manufacturing Co. v. Panduit Corp., 106 S.Ct. 1578, 229 USPQ 478 (1986); Raytheon Co. v. Roper Corp., 724 F.2d 951, 956, 220 USPQ 592, 596 (Fed.Cir.1983).
 
 
 7
 The district court found that the foam guns described in the '795 patent use "similar nozzles to the ones described in the '110 patent but lack the type of gun body, valves, valve components, latch, and recess used in the '110 patent." (Emphasis added.) It is undisputed that the '795 patent describes and claims a gun having Clayton-type valves which must tilt to operate and that such tilting precludes mounting the nozzle directly on the housing of the gun as is required by the claims of the '110 patent. Although U.S. Patent No. 3,399,837, issued to Frick (the Frick '837 patent), does describe a gun having a disposable nozzle mounted directly on the housing or gun body, the district court concluded that neither this combination of references, nor other cited art, barred patentability.
 
 
 8
 Universal maintains that this conclusion is erroneous because it would have been obvious to modify the '795 gun by replacing the Clayton-type valves and by using the disposable nozzle of the Frick '837 gun. We cannot agree. Although Universal has carefully enumerated the claim limitations to be found in each of these separate references, it has failed to point out any teaching, suggestion or incentive to combine them. Carella v. Starlight Archery, 804 F.2d 135, 140, 231 USPQ 644, 647 (Fed.Cir.1986), opinion modified on reh'g, 1 USPQ2d 1209 (1986); ACS Hospital Systems, Inc. v. Montefiore Hospital, 732 F.2d at 1577, 221 USPQ at 933.
 
 
 9
 Moreover, even if the district court erroneously concluded that the examiner considered the sale gun, Universal has failed to show any harm resulting from that alleged error. Universal admitted that the sale gun is "identical to [the gun] described and illustrated in the Brooks '795 patent," (emphasis added) which the district court found lacked "the type of valves ... used in the '110 patent" and "operated in a different way on different principles." Given that admission, the district court's comparison of the '795 patent and the '110 patent was tantamount to making the proper comparison between the sale gun and the '110 patent in arriving at its conclusion of nonobviousness. Thus, in view of the nonobvious differences found by the district court to exist between the '795 patent and the '110 patent, it is apparent that the sale gun would not create a Sec. 102(b) bar, nor would it be invalidating prior art under Secs. 102(b)/ 103. Under these circumstances, we are unpersuaded of reversible error in the district court's conclusion that the '110 patent was not invalid for obviousness under 35 U.S.C. Sec. 103 (1982 and Supp. III 1985). We therefore affirm that portion of the district court's judgment.
 
 3. Infringement
 
 10
 Universal also makes several arguments challenging the district court's judgment of infringement. It first contends that the district court's holding that the defense of intervening rights was inapplicable is clearly erroneous. It asserts that claim 4 of the '110 patent was neither literally infringed nor infringed under the doctrine of equivalents. And, finally, Universal argues that the district court's infringement analysis was based upon clearly erroneous findings of fact and upon an improper comparison of the accused device to a commercial embodiment, rather than to the claims, of the '110 patent.
 
 
 11
 In support of its intervening rights defense, Universal contends that 35 U.S.C. Sec. 252 (1982) "should be strictly construed to require, as the statute literally requires, truly identical claims in the original and reexamined patents." Where, as in this case, the claims have been amended in any respect during the reexamination proceedings, Universal would have this court hold that the defense of intervening rights automatically arises, barring recovery for infringement. These same contentions were addressed and rejected in Kaufmann Co. v. Lantech, Inc., 807 F.2d 970, 1 USPQ2d 1202 (Fed.Cir.1986). See also Slimfold Manufacturing Co. v. Kinkead Industries, Inc., 810 F.2d 1113, 1 USPQ2d 1563 (Fed.Cir.1987), and Seattle Box Co. v. Industrial Crating and Packing, Inc., 731 F.2d 818, 221 USPQ 568 (Fed.Cir.1984). We are bound by these decisions and, accordingly, the defense of intervening rights is not available to Universal if the amendments made during the reexamination proceedings did not alter the scope of the claims. Kaufman, 807 F.2d at 978, 1 USPQ2d at 1207-08.
 
 
 12
 On the question of whether the scope of the claims was unchanged, Universal argues that the changes were substantive and, thus, the claims were not legally identical under the standard set forth in Kaufmann, 807 F.2d at 977, 1 USPQ2d at 1207. The district court's opinion contains only the conclusory statement that the "changes made to the ... claims were not substantive."
 
 
 13
 Interpretation of the claims to assess their scope is a legal question. Howes v. Medical Components, Inc., 814 F.2d 638, 643, 2 USPQ2d 1271, 1273 (Fed.Cir.1986). Factual issues may arise, however, when claim interpretation is disputed and it becomes necessary to look at extrinsic evidence, such as the specification and the prosecution history. Id. Because additional fact findings may be required and because Universal has raised several additional points relating to infringement that necessitate our remanding for appropriate findings, we also remand the question of effect of the changes to the claims in the reexamination. The district court should set forth the reasons for its ultimate conclusion that these "changes" were not substantive, together with any necessary findings of fact.
 
 
 14
 Universal next asserts that claim 4, which was not amended during reexamination, was not infringed because the limitations of that claim were not present in the accused device. In support, Universal cites testimony by Brooks, the inventor of the Insta-Foam '795 and '110 guns, that the accused device has neither a plunger connected to the trigger nor a spring which engages the trigger, as required by claim 4. In addition, Universal notes that in the accused device "the end portions of the valves are contacted by the trigger but are not connected thereto ...," the trigger does not pull the valves into a closed position, and the plunger cannot be pulled away from the valve means by the trigger, as required by claim 4. Universal also asserts that claim 4 is not infringed under the doctrine of equivalents because the scope of that claim has been narrowed by prosecution history estoppel. According to Universal, each of these cited differences between the accused device and the limitations of claim 4 corresponds to limitations added to claim 4 during the original prosecution so as to distinguish over U.S. Patent No. 3,330,484 to Johnson. The district court's opinion is completely silent as to these alleged differences and as to any effect of the prosecution history of the '110 patent on the scope of claim 4.
 
 
 15
 Finally, Universal also denies infringement of claims 1-3 and 5-12. It argues that the district court's finding that the accused device contains the claimed "nozzle seating means" is not only clearly erroneous, but also contradicts testimony by Brooks to the effect that no element of the accused device performs the recited function of the claimed nozzle seating means. In addition, Universal maintains that the district court's infringement analysis is flawed because it improperly compared the accused device to a commercial embodiment of the invention claimed in the '110 patent rather than to the claims.
 
 
 16
 The district court noted testimony by Brooks that "all the elements of the claims are literally present in the [accused device]," (emphasis added) but then held that the accused device "infringes the Insta-Foam gun under the doctrine of equivalence [sic]," (emphasis added) without entering any findings supporting equivalence. This court has held that infringement under the doctrine of equivalents is a question of fact subject to the clearly erroneous standard on review. Raytheon Co. v. Roper Corp., 724 F.2d at 961, 220 USPQ at 600. Review under this standard is clearly impossible in the absence of appropriate findings. Further adding to the confusion, the court described in detail the Insta-Foam commercial gun and stated that "[a]n examination of the two guns--keeping in mind that the Insta-Foam gun embodies the '110 patent--reveals that the differences between them ... are insignificant." Comparison, however, must be made to the claimed invention, not to a commercial embodiment thereof, Loctite Corp. v. Ultraseal Ltd., 781 F.2d at 870, 228 USPQ at 95; ACS Hospital, 732 F.2d at 1578, 221 USPQ at 933.
 
 
 17
 Accordingly, we must remand for the district court to determine whether claim 4, properly interpreted in the light of the prosecution history and specification, is infringed by Universal's gun and whether such gun infringes claims 1-3 and 5-12 by reference to the claim language (not the commercial embodiment thereof by Insta-Foam) and by making appropriate factual findings as to equivalence.
 
 CONCLUSION
 
 18
 For the foregoing reasons, we affirm that portion of the district court's judgment holding the '110 patent not invalid under 35 U.S.C. Sec. 103 and vacate and remand the judgment with respect to the infringement issues. In the remand, the district court must also determine whether the '110 patent is unenforceable for inequitable conduct.
 
 
 19
 AFFIRMED-IN-PART, VACATED-IN-PART AND REMANDED.
 
 
 20
 JACK R. MILLER, Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 21
 I differ with the majority only in that I would also remand for appropriate findings with respect to validity. The District Court's analysis is too cryptic for meaningful review. Also, to support its holding on validity, the District Court erroneously relied on the fact that the examiner allowed the claims although he had the '795 patent before him; the Court concluded that "[t]he prior art Universal relied on at trial was the same as or certainly no more material than that known to the examiner in both the original and the reexamination proceedings." However, unlike the prior sales of the '795 gun (unknown to the examiner), the '795 patent is not prior art. Thus, the examiner could not have cited it against the claims.