**John Glen DAVIES, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 90–78C.

United States Court of Federal Claims.

Aug. 30, 1994.

Arthur L. Whinston, Portland, OR, for plaintiff.

Robert G. Hilton, with whom were Asst. Atty. Gen. Frank W. Hunger and Vito J. DiPietro, Washington, DC, for defendant. John Fargo, of counsel.

## OPINION

BRUGGINK, Judge.

This action is before the court on the parties' cross-motions for summary judgment. Plaintiff contends that the United States has used his patent, U.S. Patent No. 3,711,638 ("'638 patent"), without providing just compensation. Specifically, plaintiff asserts that the F–4E, RF–4C, and F111F aircraft, as equipped with "PAVE TACK" electro-optical target designator systems literally infringe his patent for a remote monitoring and weapon control systems. Plaintiff moves for partial summary judgment on liability and defendant cross-moves for summary judgment.

## BACKGROUND

*A. The '638 Patent*

Plaintiff received the '638 patent on January 16, 1973. According to the abstract, the patented device is a remote monitoring and weapon control system, in which a remotely adjustable weapon and television camera are connected to a remote control station. The

movement of the weapon and camera is synchronized by servo motors. The operator monitors a closed circuit receiver and adjusts the camera and weapon together to track a target and to trigger the weapon.

### 1. The Patent Claims

Claims 1 and 4 are at issue here. They are as follows:

1. In combination with an adjustably positioned device adapted to be optically aligned with a target, a remote control system comprising a television camera, a target monitoring receiver, closed circuit means interconnecting the camera and the receiver, means movably mounting the camera and the adjustably positioned device for synchronized movement, motor means operatively connected to the movable mounting means for imparting movement to the camera and the adjustably positioned device, manually operated control means mounted adjacent the receiver and connected to the motor means for tracking the target, triggering means mounted adjacent the receiver and connected to the adjustably positioned device for operation thereof when the target is optically aligned with the camera as viewed on the receiver, means connected to the closed circuit means for preventing operation of the triggering means except when the target monitoring receiver is operating, recording means connected to the camera, and means for rendering the recording means operative simultaneously with the triggering means.

.    .    .    .    .

4. The combination of claim 1 wherein the camera and the adjustable positioned device are mounted in fixed relation to each other on the movable mounting means and said motor means includes a pair of servo motors respectively displacing the mounting means in horizontal and vertical directions and a power source located adjacent to the camera for energization of the servo motors under control of signals generated by the control means adjacent the receiver.

'638 patent, col. 3, ll. 36–39, col 4, ll. 1–18, 30–38.

Defendant has focused on three limitations in the above claims in its opposition to plaintiff's motion for summary judgment. It contends that the limitation "means for rendering the recording means operative simultaneously with the triggering means" does not read on the accused devices. It also contends that a genuine issue of fact exists as to whether the accused devices include "means connected to the closed circuit means for preventing operation of the triggering means except when the target monitoring receiver is operating." It further contends that the accused devices do not contain a "power source" as that term is used in claim 4.

### 2. The Specification

The specification states that the invention relates "to remote control apparatus and more particularly to the adjustable positioning of a device adapted to be optically aligned with a target." Id. at col. 1, ll. 3–5. With regard to the three limitations in dispute here, it states that "[w]hile the weapon is triggered, the image picked up by the camera is recorded. Also, the weapon can be triggered only while the receiving monitor is operating." Id. at col. 1, ll. 43–45. The specification further states that "[t]he weapon is ... conditioned for operation only after the television camera is in operation so that the target with which the weapon is to be optically aligned, may be tracked by the operator through the control console." It also states that "[p]ower from power source (78) at weapon station, will supply operating voltage to the motor control circuit section." Id. at col. 3, ll. 12–14. More detailed discussion of the specification and accompanying drawings is included in the discussion section.

### 3. Prosecution History

On January 5, 1971, plaintiff filed his application for a patent. His application contained eight claims. Claim 1 was the same as the current claim 1 up to the point where it reads "triggering means mounted adjacent the receiver and connected to the adjustably positioned device for operation thereof when the target is optically aligned with the camera as viewed on the receiver," at which point

it ended. Claim 5 read "[t]he combination of claim 1 including recording means connected to the camera, and means for rendering the recording means operative simultaneously with the triggering means."

In an action dated February 2, 1971, the examiner rejected all eight of plaintiff's claims. The examiner rejected claims 1, 2, 7, and 8, citing 35 U.S.C. § 102 (1988) and U.S. patent # 3,417,198 [the "Loyd patent"], and stating the Loyd patent showed the remote control television weapon system. In rejecting claims 3-6, the examiner cited 35 U.S.C. § 103 and the Loyd patent, stating that the addition of a video tape recorder ("VTR") to the television system would be an obvious modification to a person with ordinary skill in this art. The examiner also cited patents ## 2,359,032 and 3,504,122, which also showed remote weapon systems aimed by television, as well as # 3,467,771, which showed a security system that used a VTR.

In his response, plaintiff attempted to distinguish his invention from the prior art. He first noted that his device employed a safety control that prevented triggering unless the camera was operating. He further noted that unlike the prior art, the motors and power-operated components at the remote station received their power from a power source located at the remote station, whereas the power supply at the control station supplied only the energy for the signals that controlled the devices at the remote station. Moreover, although he conceded that the "mere addition of a video tape recorder to a television system would be obvious to persons skilled in the art," he observed that the references cited by the examiner did not show or teach "means for rendering the recording means operative simultaneously with the triggering means," and that the addition of such means would not be obvious. He also amended claim 1 to include "means connected to the closed circuit means for preventing operation of the triggering means except when the target monitoring receiver is operating."

In an action dated April 10, 1972, the examiner once again rejected claims 1, 2, 7, and 8, stating that the addition of a safety interlock would be obvious over patent # 3,504,122. He stated, however, that claims 3-6 would be allowed if written in independent form including all limitations.

In response, plaintiff rewrote claims 3-6 as the examiner had indicated. Plaintiff rewrote claim 5 to include all of his original claim 1 as well as the amendment. He renumbered it as claim 1. Claim 2 remained as written. Claims 4 and 6, as amended, became claims 3 and 4. The original claim 3 was dropped. In correspondence dated August 3, 1972, the examiner notified plaintiff that his claims had been allowed as rewritten.

### B.  Accused Devices

The PAVE TACK is contained in a pod located underneath the aircraft. It contains a movable platform, an infrared sensor, and a laser. The laser illuminates a target, which guides a missile to it. The weapons systems officer can view the infrared sensor's input through a cockpit indicator display monitor. The laser and the sensor are aligned so that the weapons systems officer can view the target that the laser is illuminating. Each of the aircraft at issue here contain a VTR that can record the sensor's input as well as other inputs from the aircraft's other systems.

In the aircraft at issue here, no single part exists that can turn on both the laser and video tape recorder. To turn on the laser and the video tape at the same instant, the weapons systems officer would have to turn on the recorder switch with one hand while using the other to depress the laser trigger.

On the F-111F, the laser cannot be triggered unless the monitor is operative and the VTR is recording input from the monitor. Defendant asserts that in the F4E and RF4C the laser can be triggered even if the monitor is not operative or the VTR is not recording monitor input.[1]

---

1.  Plaintiff states that he has no basis for contesting this representation. At a minimum, an issue of fact exists. See *infra* note 6.

## DISCUSSION

Summary judgment is appropriate "in patent cases as in any other case" where a party has demonstrated that no genuine issue of fact exists and that it is entitled to judgment as a matter of law. *Howes v. Medical Components, Inc.*, 814 F.2d 638, 643 (Fed.Cir.1987). If the parties have cross-moved, as they have here, each party bears this burden individually. *Rains v. Cascade Indus.*, 402 F.2d 241 (3d. Cir.1968).

As the party that bears the burden of proof on its claim, plaintiff must demonstrate a lack of genuine issues of fact and that as a matter of law it is entitled to judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). To demonstrate infringement, plaintiff must show that each limitation in at least one of its claims is present in the accused device. *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed.Cir.1994). Likewise, defendant must demonstrate a lack of genuine issues, and that as a matter of law plaintiff cannot meet his burden with regard to at least one of the elements of each of his claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To prevail on its cross-motion, defendant need only show that one of the limitations is not present in the accused device. *See Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 935 (Fed.Cir.1987) (en banc), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988).

Resolution of the cross-motions centers on three limitations. Defendant contends that a genuine issue of material fact exists as to whether PAVE–TACK equipped F–4E and RF–4C include "means connected to the closed circuit means for preventing operation of the triggering means except when the target monitoring receiver. is operating." It further contends that although the F111F does contain such a means, a genuine issue of fact exists as to whether a structure equivalent to the one in the '638 patent provides those means.

Defendant's primary contention, however, is that plaintiff has failed to demonstrate that any of the aircraft contain "means for ren-dering the recording means operative simultaneously with the triggering means." It has cross-moved for summary judgment on this issue. Because the resolution of this defense potentially makes the others moot, the court will initially focus the analysis on it.

### A. "Means for rendering the recording means operative simultaneously with the triggering means"

The patent uses "means-plus-function" language to describe this particular limitation. The Patent Act specifies how a court shall interpret such a claim. At 35 U.S.C. § 112, ¶ 6 the act states:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material or acts described in the specification and equivalents thereof.

35 U.S.C. § 112 (1988). This section allows an inventor to describe an element of his claim in general terms, as a "means" for performing a function, rather than requiring him to provide an exhaustive list of every structure capable of performing that function. *De Graffenried v. United States*, 20 Cl.Ct. 458, 481 (1990).

The claim is not construed, however, to cover every means that performs the claimed function. *Pennwalt*, 833 F.2d at 934. Instead, a means-plus-function claim covers only the structure, material, or acts described in the specification or their equivalents. *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1574 (Fed.Cir.1985); *Radio Steel & Mfg. Co. v. MTD Products, Inc.*, 731 F.2d 840, 848 (Fed.Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 62 (1984). If a patent-holder claims literal infringement of a means-plus-function limitation, as plaintiff does here, he must demonstrate that a structure in the accused device performs a function identical to the claimed one and that the structure is the same as or equivalent to the one described in the patent's specification. *Valmont Indus. v. Reinke Mfg. Co.*, 983 F.2d

1039, 1042 (Fed.Cir.1993); *Pennwalt,* 833 F.2d at 934.

■ The parties' dispute regarding "[m]eans for rendering the recording means operative simultaneously with the triggering means" results from differing constructions of this limitation. The parties' dispute on this issue does not bar summary judgment, as claim interpretation is a question of law. *Howes,* 814 F.2d at 643.

### 1. Claim Interpretation

Defendant contends that the limitation at issue requires that the structure include a part that initiates operation of both the video recorder and the triggering means at the same moment. Plaintiff contends that the limitation is met if the recording means operate at the same time as the triggering means. Plaintiff acknowledges that in the embodiment shown in the drawings accompanying his specification, triggering and activation of the VTR occur at the same moment. He contends, however, that the specification only illustrates one of many ways to construct the device claimed by his patent. According to plaintiff, interpreting his claim to conform to the embodiment illustrated in the specification would add an extraneous limitation. His interpretation of the limitation only requires that the triggering means and recording means operate at the same time, regardless of how that result is achieved. Plaintiff's most recent statement of his interpretation of the limitation reflects this view:

> What *is* important is that the recording means operate "simultaneously with the triggering means," *i.e.,* that both operate together or at the same time such that a "practical recording of the target" can be obtained "while the weapon is triggered." It is not important to the object of the invention whether the triggering enables ("initiates") the recording or whether the recording enables the triggering.[2]

■ To construe a means-plus-function limitation such as this, the court may look to various factors, as it would in construing any

other claim. *Palumbo v. Don–Joy Co.,* 762 F.2d 969, 974 (Fed.Cir.1985). These factors include the claim itself, the specification, and the prosecution history. *Id.* The specification is particularly important to the construction of this limitation, because under section 112, paragraph 6, the corresponding structure described in the specification must be read into a means-plus-function limitation. *In re Alappat,* —— F.3d ——, —— No. 92–1381, slip op. at 37, 1994 WL 395740 (Fed. Cir. July 29, 1994) (en banc); *In re Donaldson Co.,* 16 F.3d 1189, 1193 (Fed.Cir.1994) (en banc); *Pennwalt,* 833 F.2d at 934. The court must construe the limitation to cover only the structures described in the specification or their equivalents. *Pennwalt,* 833 F.2d at 934.

■ The claim language at issue here concerns three elements: "[1] *a means for·rendering* [2] *the recording means* operative simultaneously with [3] *the triggering means.*" (emphasis added). On its face, the limitation claims an element that creates a relationship between the operation of two other elements. Defendant's construction of the claim reflects this fact. Although plaintiff's construction reflects a relationship between the operation of the triggering means and VTR, it does not require that the device include a third part that creates that relationship.

Moreover, plaintiff's interpretation requires reading the phrase "with the triggering means" as shorthand for "while the triggering means is operating." Nothing in the context of the limitation indicates that such words should be implied. Instead, the choice of words appears to be merely a way to avoid the repetitive formulation "rendering the recording means operative simultaneously with rendering the triggering means operative." Thus, defendant's construction is the one more consistent with the plain language of the limitation. The claim, as relevant to this issue, requires three structural parts rather than two: a recording means, a triggering means, and a third part that renders both of them operative.

---

**2.** Letter from Plaintiff's Counsel (Aug. 22, 1994) (emphasis in original). Plaintiff set forth this formulation of its position in a letter mailed to

chambers after oral argument, and filed with the Clerk by leave of the court.

To construe the language of plaintiff's claim properly, the court also "must look to the specification and interpret [the claim] language in light of the corresponding structure ... described therein, and equivalents thereof, to the extent that the specification provides such disclosure." *In re Donaldson Co.*, 16 F.3d at 1193. As noted above, the element at issue operates to create a relationship between two other elements. Those two elements are set forth earlier in claim 1, and also are means-plus-function claims. Thus, to construe the limitation at issue the court must look to the specification to construe each of the following three elements: a "triggering means mounted adjacent the receiver and connected to the adjustably positioned device for operation thereof when the target is optically aligned with the camera as viewed on the receiver;" a "recording means connected to the camera;" and a "means for rendering the recording means operative simultaneously with the triggering means."

The specification and accompanying drawings describe the following part of the structure as the "triggering means:" A trigger mechanism (82) is associated with the weapon, or adjustable device. An iris-operating solenoid (32) is also associated with the weapon. Both are connected to a relay circuit section (80). The "relay circuit section (80) ... will, upon receipt of a triggering signal, energize the solenoid (32) ... and the trigger mechanism (82) associated with the weapon" "in order to trigger or render the weapon operative." The triggering mechanism and the solenoid are controlled through a control signal (the triggering signal) derived from a power supply (70) at the control station. The triggering signal is sent through the control line (38), but cannot be sent unless the safety switch (46) and the triggering switch (50) are both closed. The triggering switch (50) is mounted on a weapon positioning control (48), which is mounted on a control panel (42). The control panel is part of the control console (12), which also houses the receiver (34). The control console is connected to the control circuit by a hard wire (the control line) (38), which carries control signals. The control circuit contains the relay circuit section. Closing of the triggering switch (50) causes the triggering signal to be sent to the control circuit (30).

The specification and accompanying drawings describe the following part of the structure as the recording means: A VTR (86) receives input from the camera (20) through a hard wire. The VTR receives control signals from the power supply (70) at the control station. The control signals travel through the control line (38), which is connected to the triggering switch (50).

■ The specification and accompanying drawings describe the following part of the structure as the "means for rendering the recording means operative simultaneously with the triggering means:" The triggering switch (50)[3] is connected by a hard wire to both the relay circuit section (80) of the control circuit (30) and to the VTR (86). Closing the triggering switch provides the triggering signal. The triggering signal causes the solenoid (32) and the trigger mechanism (82) to energize. The triggering signal also "initiate[s] operation of a video tape recorder (86) in order to record the target zone through the camera (20) when the weapon is triggered." The specification indicates no other parts that turn on either the video tape recorder or the triggering means.

Examination of the specification thus reveals that closing the triggering switch (50) necessarily and simultaneously turns on both the triggering means and the recording means. The only way to send a control signal to either the triggering mechanism and solenoid or to the VTR is to close that switch. Closing of the switch sends the signal to both parts at the same time. Thus, one structure causes both the "energiz[ation] of the solenoid (32) ... and the trigger mechanism (82) associated with the weapon" and the "initiat[ion] of the operation of" the VTR.

**3.** The triggering switch arguably is also part of the triggering means. This overlap between the two elements is permissible. "[T]here is no objection to having one or more specific elements of structure included as part of two different means clauses, as long as the entire train of parts to perform each function is not identical." Robert C. Faber, *Landis on Mechanics of Patent Claim Drafting* § 34 at 87 (3d. ed. 1990) (providing exemplary cases).

The specification and drawings therefore depict the device described by defendant's interpretation of the claim. One structure both energizes a portion of the triggering means (thus rendering it operative) and activates the video camera. Plaintiff's claim covers only this structure and its equivalents. To prevail, therefore, plaintiff must show that the accused devices contain a structure, at least equivalent to the one described in the specification, that contains a part that activates both the triggering means and the recording means.

The prosecution history also supports this interpretation of the claim language. The examiner initially rejected plaintiff's claims because the addition of a video recorder to the remote control television weapon system claimed by the Loyd patent would be obvious. In his response, plaintiff conceded that the "mere addition of a video tape recorder to a television system would be obvious to persons skilled in the art." Thus, plaintiff disavowed any interpretation of his claim that read it as the "mere addition" of a VTR to a remote monitoring and weapon control system. *See Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452 (Fed.Cir. 1985) (stating that "the prosecution history ... limits the interpretation of claims to exclude any interpretation ... disclaimed or disavowed during prosecution"). Plaintiff's interpretation, however, amounts to precisely such a reading. Plaintiff has indicated that the claim would cover any device in which the VTR operated while the weapon is triggered. If a VTR were added to a remote control monitoring system, then presumably nothing would prevent it from operating while the weapon is triggered. Plaintiff has therefore previously disavowed the interpretation he now advances. The claimed limitation must represent something more specific than the mere addition of a VTR to the system.

In sum, the language of the claim, the specification, and the prosecution history all support defendant's interpretation of the claim. Nevertheless, plaintiff offers several objections to this interpretation.

First, plaintiff contends that it would be wrong to interpret his claim as requiring that the triggering and recording means be activated simultaneously merely because the embodiment described in the specification works that way. Instead, he urges the court to focus on the ultimate result: The recording means and triggering means operate at the same time. Plaintiff would have his claim cover all remote control weapons systems in which this result is achieved, without regard to how it is achieved.[4]

■ This interpretation presents an immediate difficulty. If it is correct, then the claim would be impermissibly broad, because it would claim a desired result detached from any particular mechanical means for achieving that result. As the Court stated in *Knapp v. Morss*, 150 U.S. 221, 14 S.Ct. 81, 37 L.Ed. 1059 (1893):

> [I]t is well settled by the authorities that the end or purpose sought to be accomplished by the device is not the subject of a patent. The invention covered thereby must consist of new and useful means of obtaining that end. In other words, the subject of a patent is the device or mechanical means by which the desired result is to be secured.

*Knapp*, 150 U.S. at 227, 14 S.Ct. at 83. Section 112 explicitly imposes this requirement on the construction of a means-plus-function claim by mandating that such a claim covers only the structure described in the specification and its equivalents. Thus, the claim cannot be read so that the desired result is divorced from the mechanical means that achieves the desired result. The court cannot construe plaintiff's claim as he proposes.

■ Plaintiff rightly contends that a court should not focus too narrowly on the mechanical means described in the specifica-

---

4. Plaintiff does specify that the recording means must be turned on by a "switch" or by its equivalent. In plaintiff's reading, however, it does not matter what role the switch plays in the overall structure—it need not turn on any other devices or switch the recorder on at any specific mo-

ment. This one concession to structure does not obscure the fact that plaintiff has effectively read structure out of the claim. He contends that it covers any device in which the desired result is ultimately achieved, regardless of the mechanical means that achieves it.

tion of a means-plus-function claim. Means-plus-function claims are not construed to cover only physical equivalents of the specified structure. *De Graffenried,* 20 Cl.Ct. at 481. To do so would defeat the purpose of section 112, paragraph 6, to allow this useful claim-drafting device. *Id.* In allowing the use of such language, however, Congress did not intend that every means that performs the function satisfy such a limitation. *Pennwalt,* 833 F.2d at 934. "[S]ection 112, paragraph 6, operates to limit a claim from every possible means to those which are 'equivalent.'" *Intel Corp. v. U.S. Int'l Trade Comm'n,* 946 F.2d 821, 842 (Fed.Cir.1991). Thus, the structure described in the specification is the touchstone for construing a means-plus-function claim. Although such a claim covers more than just the specified structure, it does not extend beyond the equivalents of that structure. Section 112, paragraph 6, does not allow plaintiff to read the structure described in his specification out of his claim.

Plaintiff also points to specification language that he contends supports his interpretation. The first reference reads: "While the weapon is triggered, the image picked up by the camera is recorded." '638 patent, col. 1, ll. 33–34. The second reference reads: "Closing of the triggering switch (50) may be also operative to initiate operation of a video tape recorder (86) in order to record the target zone through the camera (20) when the weapon is triggered." *Id.* at col. 3, ll. 23–26. Plaintiff points out that the specification also describes as an object of the invention "practical recording of the target." *Id.* at col. 1, l. 13.

With respect to the first reference, "[w]hile the weapon is triggered," plaintiff contends that this choice of words indicated that he defined the claim language "simultaneously" as "while." The language to which he refers, however, does not describe the part of the structure claimed by the limitation or how it works. Instead, it describes the relationship between operation of the recording means and operation of the triggering means. It neither describes the element that renders those means operative nor describes how the recording means and the triggering means are rendered operative. In fact, this specifi-

cation language is not inconsistent with defendant's interpretation. It merely describes the condition of the device after both the VTR and the triggering means are rendered operative.

Second, plaintiff relies on the specification's reference to "practical recording." He contends that the invention would best accomplish this object by initiating recording before the weapon is triggered. As an example, he notes that the specification states that "the system ... will be particularly useful ... for aircraft enabling the pilot and crew to thwart" hijackers. col. 1, ll. 19–22. He contends that obtaining a record of all the action would be more helpful than capturing just the moment after triggering. Therefore, according to plaintiff, the court should not read his claim to require that triggering and recording begin together. As explained by plaintiff's counsel at oral argument, underlying this argument is the assumption that "practical" recording requires a longer period of time than provided by recording initiated at the time of triggering. The specification does not, however, indicate what kinds of recording are practical and what kinds are impractical. The mere inclusion of the undefined adjective "practical" is an insufficient foundation for plaintiff's broad reading of his claim.

Third, plaintiff notes that the reference that specifically refers to the limitation describes activation of the VTR by the triggering signal as an optional and additional effect. The language reads: "Closing of the triggering switch (50) *may be also* operative to initiate operation of a video tape recorder (86)...." (emphasis added). He contends that this choice of language indicates that closing of the triggering switch is only one way to turn on the VTR, rather than the only way. It follows that a way could exist to turn on the VTR before triggering. Such a possibility removes the connection between triggering and activation of the VTR. The specification does not, however, actually describe any other way to activate the VTR. Plaintiff's claim cannot be construed to cover structures that could have been included in the specification, but were not. Under section 112, paragraph 6, plaintiff's means-plus-

function claim is limited to the structure described in the claim and its equivalents. Moreover, the prosecution history indicates that inclusion of the words "may be also" had a different purpose than plaintiff now contends. His original patent application attempted to claim a system, in claim number one, that did not include a video recorder. He introduced the video recorder and "means for rendering the recording means operative simultaneously with the triggering means" in dependent claims three and five. The original specification reflected the dependent status of those claims: it described the activation of the VTR as an optional and additional effect of the triggering signal, apart from its effect in the independent claim. When dependent claim 5 was amended to create independent claim 1, the specification language describing activation of the VTR was not amended. Thus, the words "may be also" remained as inaccurate indicia of a dependent claim.

Plaintiff's objections to defendant's interpretation of the limitation therefore fail. The court holds that "a means for rendering the recording means operative simultaneously with the triggering means" requires that the means at issue renders both the triggering means and the recording means operative at the same moment.

### 2. Infringement

▮ Because the limitation at issue here employs means-plus-function language, plaintiff's claim fails unless he can demonstrate that a structure in the accused devices performs a function identical to that claimed by his patent. *Valmont*, 983 F.2d at 1042; *Pennwalt*, 833 F.2d at 934. Therefore, the court does not inquire whether the accused device includes an equivalent to the structure of the patented device unless the court first finds identity of claimed function. *See Pennwalt*, 833 F.2d at 934. Infringement is a

question of fact, and the court may not grant summary judgment unless no issues of material fact remain. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed.Cir. 1985).

Plaintiff has offered no factual objections to defendant's proposed findings of fact.[5] They are therefore established. Defendant's proposed finding 24 states: "In an aircraft equipped with PAVE TACK, there is no setting on any switch which will cause the aircraft's video tape recorder to turn on simultaneously with the triggering of the laser." Defendant's proposed finding 25 states:

> In an aircraft equipped with PAVE TACK, the only way to turn on the aircraft's video tape recorder simultaneously with the laser requires a human to simultaneously manipulate the laser trigger and another switch. Specifically, the weapon systems officer would have to turn the recorder switch to "record" with one hand, while he depressed the laser trigger switch with the other hand.

▮ These findings, as established, show that no mechanical part in the accused devices performs a function identical to the one claimed in the patent. The PAVE TACK, as installed in any of the aircraft, does not include a means that activates both the VTR and the triggering means. The F111F does contain means for disabling the triggering means unless the recorder is recording input from the infrared sensor. This function differs, however, from activating both the VTR and triggering means simultaneously. In the F111F, to activate the triggering means, the VTR must already be activated.

▮ The fact that the weapons officer could, if he so chose, perform this function manually, does not constitute infringement. Patent claims do not cover structures in which a human being substitutes for a part of

---

5. Plaintiff contended that only a legal issue existed with regard to defendant's proposed findings 1–7, 9 and 22–28. As to these, he posed the following question: "Do plaintiff's claims require that recording be 'initiated,' *i.e.*, turned on, only by the triggering means?" Plaintiff's answer was "no." As explained above, plaintiff's question assumes a different construction of the claim than its language warrants. The more properly phrased question would be: Do plaintiff's claims require that the same means activates both the recording means and the triggering means? In light of the court's affirmative answer, defendant's proposed findings of fact, as admitted by plaintiff, prove fatal to plaintiff's claim.

the claimed structure. *Brown v. Davis,* 116 U.S. 237, 249, 6 S.Ct. 379, 385, 29 L.Ed. 659 (1886).

The court holds that the plaintiff cannot demonstrate that the accused devices perform a function identical to the one at issue. Therefore, plaintiff cannot demonstrate literal infringement.

Plaintiff indicated at oral argument that his claim was one for literal infringement and that he was not claiming infringement under the doctrine of equivalents. "Application of the doctrine of equivalents is the exception, not the rule; it is not intended to be simply a second prong of every infringement analysis." *Judin v. United States,* 27 Fed.Cl. 759, 785 (1993). Nevertheless, little guidance exists as to when the doctrine is applicable. *Id.* The court will therefore assume for the sake of argument that the doctrine applies.

 A holding of no infringement under the doctrine of equivalents is justified if the court finds, among other things, that the accused device does not perform a function required by the claim or one equivalent to it. *Pennwalt,* 833 F.2d at 936. As discussed above, plaintiff has admitted to defendant's proposed findings of fact. Plaintiff's admission to defendant's proposed finding of fact number 26 reflects reliance on his contention that the accused devices literally infringed the patent claims as interpreted by him. Defendant's proposed finding of fact number 26 states: "An aircraft equipped with PAVE TACK cannot perform a function that is equivalent to the function of rendering the aircraft's video tape recorder operative simultaneously with the laser." This admission precludes a finding for plaintiff under the doctrine of equivalents, as it establishes that the accused device does not perform a function equivalent to the claimed function.

### CONCLUSION

Plaintiff's patent claim requires a means that activates both the recording means and the triggering means. The accused devices do not perform this function or its equivalent. Therefore the court denies plaintiff's motion for partial summary judgment [6] and grants defendant's motion for summary judgment. The Clerk is directed to enter judgment dismissing the complaint. Costs to defendant.

---

6. Because the court grants defendant's cross-motion, it need not reach the other issues raised by defendant's response to plaintiff's motion for partial summary judgment. Nevertheless, the court notes that defendant has raised genuine issues of fact that would necessitate denial of plaintiff's motion. At oral argument, plaintiff conceded that a genuine issue of fact exists as to whether the F–4E and the RF–4C include means for preventing the triggering of the laser while the monitor is off. Moreover, the court would need to hear testimony from persons skilled in the art to determine whether the F111F as

equipped with the PAVE TACK contains a structural part equivalent to the claimed "means for preventing operation of the triggering means except when the target monitoring receiver is operating" and to determine the meaning of the claim language "power source."

