**CLINTEC NUTRITION COMPANY and Baxter International, Inc., Plaintiffs,**

**v.**

**BAXA CORPORATION, Defendant.**

**No. 94 C 7050.**

United States District Court, N.D. Illinois, Eastern Division.

Aug. 21, 1997.

Michael Sennett, Matthew Aaron Phillips,
Bell, Boyd & Lloyd, Chicago, IL, Robert

Morton Ward, Robert M. Barrett, Brian Michael Mattson, Robert James Depke, Hill, Steadman & Simpson, Chicago, IL, for Clintec Nutrition Co., Baxter Intern., Inc.

David Barry Goroff, Hopkins & Sutter, P.C., Chicago, IL, Joseph Nevi Hosteny, Raymond P. Niro, Arthur Anthony Gasey, Paul K. Vickrey, Niro, Scavone, Haller & Niro, Ltd., Chicago, IL, for Baxa Corp.

John R. Myers, Michael Sennett, Matthew K. Phillips, Bell, Boyd & Lloyd, Chicago, IL, for Baxter Healthcare Corp.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Clintec Nutrition Company[1] ("Clintec") sued Baxa Corporation ("Baxa") for patent infringement, literally and under the doctrine of equivalents. Baxa moved for summary judgment. Clintec moved for summary judgment with respect to literal infringement of claim 40. Baxa moved for cross-summary judgment with respect to literal infringement of claim 40. For the following reasons, Baxa's summary judgment motion and cross-summary judgment motion are granted. Clintec's cross-summary judgment motion is denied.

### BACKGROUND

Clintec owns U.S. Patent No. 4,653,010 (" '010 patent"). The '010 patent describes a computerized device for compounding liquids into an intravenously administered nutritional mixture.[2] The operator enters sets of parameters into the host computer via a video display terminal, or retrieves them from the prescription library maintained by the host computer. A "set of parameters" corresponds to an intravenous mixture, or "bag," for a given patient and is expressed in terms of different "base solutions" such as dextrose, amino acids, lipids, and sterile water.[3]

The operator enters the sets of parameters into one or more time slots or queues, depending on the number of dosages to be administered to a given patient within a twenty-four hour period. Each time slot or queue corresponds to a given time interval within a twenty-four-hour day.

The operator then reviews each queue of the sets of parameters and authorizes the compounding of each member of the queue. After all members of the queue have been reviewed for authorization, the host computer sorts the authorized sets of parameters of the given queue based on the specified types of base solution families. The sorted sequence can also be sorted a second time in accordance with the required base solution concentrations, and a third time, based on the size of the needed bag for each set of parameters.

Once a group of authorized sets of parameters has been sorted, the system generates a set of labels corresponding to the sorted order. The sorted sets of parameters are transmitted to the compounding apparatus in the sorted order.

The purpose of sorting the sets of parameters for mixtures to be compounded is completely to empty each base solution container during compounding, before removing it from the compounding apparatus. Waste occurs when the base solution containers are attached and detached from the compounding apparatus. Careful ordering of the mixtures to be compounded at one time minimizes the required number of base solution containers and, therefore, the associated costs. If the need arises, the operator may instruct the compounder to compound a mixture out of the sorted order.

Clintec claims that Baxa's automated compounders infringe the claims of its '010 pat-

---

1. On October 1, 1996, Clintec Nutrition Company was dissolved and the patent at issue here was assigned to Baxter International Inc. ("Baxter"). Although Baxter is the real party in interest and has been added as a plaintiff, for the sake of convenience, I will refer to both plaintiffs as Clintec.

2. The following description is derived from the patent specification.

3. The operator may enter the sets of parameters in either of three forms: volumes of the desired base solutions, the percentage of the total volume of the final mixture that each base solution represents, or a nutritional contribution of each base solution to the final mixture.

ent. Baxa moves for summary judgment, contending that there is no genuine issue of material fact that its compounders infringe any of the claims of the '010 patent literally or under the doctrine of equivalents. Clintec also moves for summary judgment, arguing that, with respect to claim 40, there is no genuine issue of material fact that Baxa literally infringes.[4] In response, Baxa moves for cross-summary judgment, essentially reiterating the arguments of its initial summary judgment motion viz-a-viz claim 40.

## ANALYSIS

It is undisputed that the claims Clintec asserts are infringed by Baxa depend upon one of the following six independent claims: 1,[5] 19,[6] 40,[7] 67,[8] 87,[9] and 93.[10] If Baxa's

4. Clintec does not move for summary judgment under the doctrine of equivalents.

5. Claim 1 is

[a] method of optimizing the compounding of a plurality of mixtures to produce individual doses of mixtures, comprising the steps of:

providing a plurality of sets of parameters of mixtures to be compounded from a selected group of base solutions, one set for each dose, each of said base solutions being contained in separate containers, each container having a discreet amount of a particular base solution;

sorting the sets of parameters in accordance with the particular base solutions included in each set and amount of each base solution included in each set to minimize the needed quantity of containers of base solution to produce said doses; and

compounding the mixtures in said sorted order thereby minimizing the needed quantity of containers of base solution to produce said doses.

6. Claim 19 is

[a] system for optimizing the compounding of a plurality of mixtures to produce individual doses of mixtures comprising:

means for storing a plurality of sets of parameters of mixtures to be compounded from a selected group of base solutions, said base solutions being contained in containers, each container having a discreet amount of base solution;

means for sorting said sets of parameters in accordance with the particular base solutions included in each set to minimize the required quantity of containers of base solution to produce said doses; and

means for mixing the base solutions in said sorted order thereby minimizing the required quantity of containers of base solution to produce said doses.

7. Claim 40 is

[a] system for compounding a plurality of selected mixtures to produce individual doses of mixture comprising:

means for receiving sets of parameters for a plurality of mixtures to be compounded from a group of base solutions, one set for each dose;

means for storing said sets and for selecting a set of parameters to be compounded;

means for compounding a selected mixture corresponding to a selected set of parameters to produce individual doses; and

means for coupling said storing means to said compounding means.

8. Claim 67 is

[a] method for compounding a plurality of selected mixtures to produce individual doses of mixtures comprising:

means for maintaining a plurality of base solutions, each base solution being contained in individual containers having a discreet amount of base solution;

providing a plurality of sets of parameters of mixtures to be compounded from a selected group of base solutions, one set of parameters for each dose to be produced;

storing said sets of parameters at a storing site and selecting a set to be compounded based on the particular base solution and amount required by a set to minimize the quantity of containers of base solution required;

transmitting said selected set of parameters from the storing site to a compounding site; and

compounding said selected mixture in response thereto.

9. Claim 87 is

[a] method of optimizing the compounding of a plurality of mixtures comprising the steps of:

providing a plurality of sets of parameters of mixtures to be compounded from a group of base solutions in which each base solution is contained in a container having a discreet amount of base solution and each dose to be produced having a set of parameters associated therewith; and

sorting the sets of parameters in accordance with the particular base solutions included in each of said sets; and the amount of each particular solution included in each set to minimize the quantity of containers of base solutions necessary to produce said mixtures; and

printing a list of the sorted sets of parameters.

10. Claim 93 is

[a] system for optimizing the compounding of a plurality of mixtures to produce individual doses comprising:

means for receiving from a user of said system a plurality of sets of parameters for producing said doses using a plurality of base solutions, each base solution being contained

accused compounders do not infringe Clintec's independent claims, they likewise do not infringe Clintec's asserted claims. *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.,* 15 F.3d 1573, 1576 (Fed.Cir.1993). A patentee may prove infringement in one of two ways—literal infringement or infringement under the doctrine of equivalents. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, ——, 117 S.Ct. 1040, 1045, 137 L.Ed.2d 146 (1997). Clintec alleges both.

## I. Literal Infringement

*A. Claims 1, 19, 87, and 93*

■ The first step in the literal infringement analysis is claim construction, whereby the court determines the scope and the meaning of a claim. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977–79 (Fed. Cir.1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *Carroll Touch,* 15 F.3d at 1576.

■ At issue are the following elements [11] of the following claims: [12]

Claim 1—"the step[ ] of . . . sorting the sets of parameters in accordance with the particular base solutions included in each set and amount of each base solution included in each set to minimize the needed quantity of containers of base solution to produce said doses."

Claim 19—the "means for sorting said sets of parameters in accordance with the particular base solutions included in each set to minimize the required quantity of containers of base solution to produce said doses."

Claim 87—"the step[ ] of . . . sorting the sets of parameters in accordance with the particular base solutions included in each of said sets; and the amount of each particular solution included in each set to min-

imize the quantity of containers of base solutions necessary to produce said mixtures."

Claim 93—the "means for sorting said sets of parameters in accordance with the particular base solutions included in each said set and the amount of each base solution used to minimize the quantity of containers of base solutions needed to produce said doses."

■ The "means" and the "step" elements of the above claims recite a function for sorting sets of parameters without reciting a definite structure in support of that function. The parties agree that Clintec has expressed these elements in the "means (or step)–plus–function" terms, subject to the requirements of 35 U.S.C. § 112, ¶ 6, which provides that "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." Literal infringement of a claim containing a means or a step clause requires that the accused device (1) perform the identical function as that identified in the limitation, and (2) do so with a structure which is the same as or equivalent to that disclosed in the specification. *Carroll Touch,* 15 F.3d at 1578; § 112, ¶ 6 (means (step)–plus–function element "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof").

■ Construing the claims, I conclude that the function in the means and step elements of claims 1, 19, 87, and 93, is, unambiguously, the sorting of a set of parameters to be compounded, in accordance with the particular base solutions and their amounts to be included in each set of parameters, such as to minimize the quantity of containers of the

in containers having discreet amounts of base solution therein;

 means for storing said plurality of sets of parameters of mixtures to be compounded from said group of base solutions;

 means for sorting said sets of parameters in accordance with the particular base solutions included in each said set and the amount of each base solution used to minimize the quantity of containers of base solutions needed to produce said doses; and

means for printing an ordered list corresponding to the sorted sets of parameters.

**11.** An "element" of a claim is also referred to as a "limitation."

**12.** I need only consider these limitations because a claim cannot be literally infringed if even a single limitation is missing in an accused device. *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 798 (Fed.Cir.1990).

base solutions. As to the structure,[13] the specification clearly discloses that it is the host computer which sorts the sets of parameters. (*See* '010 patent, col. 3, lines 44–50) ("*The host computer then sorts* all of the authorized bags based on the specified base solutions."); ('010 patent, col. 8, lines 38–49) ("After all of the members of a given queue have been reviewed for authorization the authorized members of the queue are *sorted by the host computer 4* based on the specified types of base solution families...."); ('010 patent, col. 4, lines 65–69) ("The host computer stores on its disk drive 4b programs for ... *sorting*....") (emphases added).[14]

 Having been construed, the claim elements must now be compared (or applied) to the infringing devices. *Carroll Touch*, 15 F.3d at 1576. Although this step is for the trier of fact, summary judgment is appropriate where there is no genuine issue of material fact. *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir.1995). To show that a genuine issue of material fact exists, Clintec relies on two groups of evidence: Baxa's own statements and Clintec's experts' reports.

13. *Markman* specifically left open the issue of whether the determination of the "equivalents" to the "structure, material, or acts described in specification," § 112, ¶ 6, is a question of law or fact. 52 F.3d at 977 n. 8. It would seem in keeping with *Markman* that the court should determine what structure the specification discloses and leave it to the jury to decide whether the accused device employs that or the equivalent structure.

14. Clintec urges me to consider its expert's opinion at this juncture. However, since the meaning of the limitation terms is unambiguous it would be improper to rely on extrinsic evidence. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed.Cir.1996).

15. The exhibits cited in this and the subsequent subsections are attached to Clintec's Memorandum in Opposition to Baxa's Motion for Summary Judgment on Noninfringement.

16. Where Clintec points the court to multi-page exhibits without citing a specific portion or page, the court will not pour over the documents to extract the relevant information. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("[j]udges are not like pigs, hunting for truffles buried in briefs"); *see also* N.D. Local R. 12(N)(3) (requiring specific references to record).

### 1. Baxa's Statements

Clintec points to three statements in the operating documents of Baxa's compounders. One states that the device "[s]orts patient solutions when loaded from disk." (Ex. S at 13.[15]) Another says that "[i]t is also possible to create a group of solutions by repeating a series of previous solutions." (Ex. T at 5–15.) The third states that an "option switch causes TPN–PC PLUS to implement a series of modifications that emulate the behavior of the Multi–Task Operating System from Clintec." (*Id.* at 5–73.)

Clintec also points to two excerpts of the testimony of Baxa's expert, Dennis Tribble. Here, Mr. Tribble stated that Baxa's compounders have the capacity to sort solution formulas based upon the patient's last name, (Tribble Dep., Ex. L at 82), and that if a user wishes, he or she may alter the sequence in which solutions are compounded.[16] (*Id.* at 276–77.)

### 2. Clintec's Experts' Reports

According to the Reports by Clintec's experts, Jeffrey P. Campbell and David A. Uhen,[17] when the operator of a Baxa com-

Thus, for example, when Clintec states that Baxa's software developer, Mike Myers, admitted that Baxa's compounders "sort" and points me to Exhibit E, a 17–page document, I deem Clintec's assertion unsupported.

Furthermore, I find Clintec's 12(N) Statement of Additional Facts, filed in support of its opposition to Baxa's summary judgment motion, unusable. When supported at all, the vast majority of Clintec's statements refer to the record in the form "BTX," followed by a number, whereas the exhibits Clintec submitted are designated by a letter. No cross-references were provided to enable me to verify Clintec's additional statements. *See* N.D. Local R. 12(N)(3) (requiring specific references to record). Similarly, I cannot use the evidence Clintec cites in its briefs as "BTX ___."

17. In his Report, Mr. Uhen explicitly and implicitly relies on Mr. Campbell's Report. Clintec refers me to the following pages of Mr. Uhen's Report: 22–26, 30–33 (pertaining to claim 1), 50–54 (pertaining to claim 19), 105–108 (pertaining to claim 87), and 123–127 (pertaining to claim 93). Pages 22–26 do not contain any references to sorting. The information on pages 50–54, 105–108, and 123–127 is duplicative of that on pages 30–33. Thus, I will rely on Mr. Uhen's Report at pages 30 through 33 and on Mr. Campbell's Report.

pounder enters into the computer orders for patient solutions, he or she must designate each patient as a category: "adult," "pediatric," or "neonate." The types of solutions for these three categories can be sufficiently different from one another so as to dictate different configurations of supply containers. Compounding solutions for one category at a time reduces the number of supply containers wasted in changing container configurations. When Baxa's TPN–PC PLUS Software displays alphabetized patients' names, it also displays the relevant category code. The operator is thus able to "choose ... individual patient files [with the same code] for transfer to the operating system" for compounding. Solutions with the same group code are stored on separate floppy disks or in separate directories, and compounded, one disk or one directory at a time. (Campbell's Report, Ex. U at 9.) "In this way [, the operator] uses the BAXA system to sort the solutions by type into a sequence that minimizes the number of containers of base solutions needed for compounding." (Uhen's Report, Ex. D at 30–31.)

The Reports also state that when the operator is identifying solutions for compounding, the BAXA DirectEntry Software indicates when the solution requires an ingredient not currently installed on the compounder. The operator is prompted to load the unavailable ingredient or abort that particular compounding cycle. Thus, typically, the operator scans for and compounds only solutions which call for the current ingredient configuration. "In this way, the operator uses the DirectEntry Software to choose individual patient orders by type of source solution in order to minimize source container changes and the needed quantity of containers." (Uhen's Report, Ex. D at 33); (Campbell's Report, Ex. U at 10.)

Finally, the Reports indicate that BAXA MicroMacro Operating Software contains a "batch mode" which allows the operator to compound chosen solutions as a group. The Software generates a batch report which lists the different source solutions to be used and their respective volumes for each batch to be compounded. Using this report, the operator configures the compounder in such a way as to compound solutions calling for the highest volumes first. Then, the operator modifies the sequence of solutions to be compounded accordingly. For example, if the report shows only a small amount of Ingredient A will be needed by a batch, the operator locates solutions that call for Ingredient A, and modifies the sequence in the batch to compound those solutions last, after another ingredient has been fully dispensed and a supply container position on the compounder is available. "This ... enable[s] an operator to avoid hanging additional large containers if only small doses are required near the end of the batch." (Campbell's Report, Ex. U at 12.) "In this way[,] the BAXA MicroMacro Operating Software is used to sort sets of parameters by type and amount of base solution to minimize the number of supply containers needed." (Uhen's Report, Ex. D at 32.)

The statements in Baxa's operating documents and Mr. Tribble's testimony do not create a factual issue that Baxa's compounders perform the identical function as that recited in claims 1, 19, 87, and 93, i.e., sorting a set of parameters to minimize the quantity of containers of base solutions. *See Carroll Touch*, 15 F.3d at 1578 (infringing device must perform identical function as that identified in means or step clause of claim). They, at best, show that Baxa's compounders can alter the sequence in which the solutions are compounded, as compared to that in which they were entered into the computer.

Clintec's experts' Reports do show that Baxa's compounders allow the operator to arrange the sequence of the sets of parameters to be compounded so as to minimize the number of source solution containers; in other words, the operators can "sort" as that term is defined in claims 1, 19, 87, and 93. However, Clintec has offered no evidence from which a reasonable fact finder could conclude that Baxa's compounders sort by means of a computer or its equivalent. *See id.* (accused device must employ structure identical to or equivalent of that disclosed in specification). As a matter of law, human judgment exercised by the operator of a BAXA compounder is a structure neither identical to nor the equivalent of the comput-

er. *Davies v. United States,* 31 Fed.Cl. 769, 778–79 (1994) (citing *Brown v. Davis,* 116 U.S. 237, 249, 6 S.Ct. 379, 385, 29 L.Ed. 659 (1886)). In *Davies,* the user of the accused device could manually perform the function which the patent claimed as an automatic function. Granting summary judgment to the defendant on literal infringement, the court held that where "a human being substitutes for a part of the claimed structure," the infringement standard under 35 U.S.C. § 112, ¶ 6, that the structure be same as or equivalent to that disclosed in the specification, *Carroll Touch,* 15 F.3d at 1578, is not met. *Davies,* 31 Fed.Cl. at 778–79; *see also Valley Recreation Prods., Inc. v. Arachnid, Inc.,* Nos. 93–1543, 94–1101, 36 F.3d 1117, 1994 WL 530818, at *3 (Fed.Cir. Sept.30, 1994) (affirming grant of summary judgment to defendant on literal infringement, where patent claimed scoring means requiring human intervention, whereas accused device performed identical function automatically).[18]

### B. Claims 40 and 67

Here, I must construe the following elements of the following claims: [19]

> Claim 40—the "means ... for selecting a set of parameters to be compounded."

> Claim 67—"means for ... selecting a set to be compounded based on the particular base solution and amount required by a set to minimize the quantity of containers of base solution required."

---

**18.** Clintec also relies on Baxa's § 510(k) submission to the Food and Drug Administration ("FDA"), representing that Baxa's and Clintec's compounders are "substantially equivalent." (Ex. F at 1.) Clintec does not, however, point me to an affirmative representation in the submission that Baxa's compounders "sort."

Pursuant to the FDA regulations, Baxa gained the Agency's approval to market its compounders without undergoing a more extensive approval process, because Baxa was able to demonstrate that its compounders were "substantially equivalent" to Clintec's. (*Id.*) A device is "substantially equivalent" if it has the same intended use and the same technological characteristics as those of the existing device. 21 U.S.C. § 360c(i)(1)(A) (West Supp.1997). Thus, the 510(k) submission compares the accused product, Baxa's compounders, with the commercial embodiment of the '010 patent, Clintec's compounders. "[I]t is error for a court to compare in its infringement analysis the accused product ... with the paten-

■ The issue is the meaning of the function "selecting." *See* 35 U.S.C. § 112, ¶ 6 (claim element expressed in means-plus-function terms).[20] Baxa contends that "selecting" is synonymous with "sorting" appearing in claims 1, 19, 87, and 93, i.e., sorting a set of parameters to be compounded such as to minimize the quantity of containers of base solutions. Clintec counters that "selecting" "means [merely] to pick or choose a set of parameters (i.e. formula) out of a sequence of formulas entered into the system by preference, such as for an emergency."[21] (Pl.'s 12(M) Statement ¶ 37.)

■ "It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics,* 90 F.3d at 1582 (citing *Markman,* 52 F.3d at 979).

### 1. Patent/Claims

■ The terms of the claims are given "their ordinary and accustomed meaning, unless it appears that the inventor used them differently." *Jonsson v. Stanley Works,* 903 F.2d 812, 820 (Fed.Cir.1990) (quoting *Envirotech Corp. v. Al George, Inc.,* 730 F.2d 753, 759 (Fed.Cir.1984)). To sort is to choose, allot, classify. *See* Webster's Third New Int'l Dictionary at 2175 (1981). To select is to choose. *Id.* at 2058. Thus, the two words are synonyms.

---

tee's commercial embodiment." *Zenith Laboratories, Inc. v. Bristol–Myers Squibb Co.,* 19 F.3d 1418, 1423 (Fed.Cir.1994). Although in the recitation of facts, the court in *United States Surgical Corp. v. Hospital Prods. Int'l Pty. Ltd.,* 701 F.Supp. 314, 347 (D.Conn.1988), remarked that statements in the § 510(k) submission "may be construed as admission of infringement," the court did not rely on the submission in the infringement analysis.

**19.** *See supra* note 12.

**20.** The parties agree that Clintec has expressed these elements in the means-plus-function terms, subject to § 112, ¶ 6.

**21.** The record does not support Clintec's argument that Baxa should not be allowed to offer its definition of "selecting" because it refused to do so throughout discovery.

Additionally, the terms of a claim must be interpreted in light of the other claims. *Jonsson*, 903 F.2d at 819. Claim 67 includes the "means for ... selecting a set to be compounded based on the particular base solution and amount required by a set to minimize the quantity of containers of base solution required." Claims 1, 19, 87, and 93 all include a step or a means of sorting a set of parameters to be compounded, in accordance with the particular base solutions and their amounts to be included in each set of parameters, such as to minimize the quantity of containers of base solutions. Since the context in which the term "sorting" appears in claims 1, 19, 87, and 93 is identical to that in which "selecting" appears in claim 67, the two terms have identical meanings.

### 2. Specification

The specification can act as a dictionary when it defines terms by implication. *Markman*, 52 F.3d at 979. The specification provides that

> [i]n accordance with the present invention a system and a method are provided for compounding a plurality of *selected* mixtures from one or more base solutions. The system includes a storage device for storing sets of parameters for a group of mixtures which are to be compounded from the base solutions. A compounder is electrically connected to the storage device, and in combination with the storage device, compounds a *selected* mixture on receiving a set of parameters which define the base solutions to be used and the amounts thereof.

('010 patent, col. 3, lines 3–13) (emphasis added). The above is the first paragraph of the Summary of the Invention. Nowhere else in the specification do the words "select," "selecting," or "selected" appear. Given the importance and the prominence of the

sorting feature to the Clintec's invention, it is unlikely that the first paragraph of the Summary of the Invention would refer merely to "pick[ing] or choos[ing] a set of parameters" out of sequence in which they were entered into the computer, (Pl.'s 12(M) Statement ¶ 37), without sorting. A more logical interpretation is that the mixtures (or sets of parameters) are "selected" for compounding (or transmitted to the compounder) in the order in which the host computer has previously sorted them to minimize the quantity of containers of base solutions out of which the mixtures will be compounded.

### 3. Prosecution History[22]

"The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.... Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers." *Southwall Technologies*, 54 F.3d at 1576.

Claim 40 (numbered 37 in the patent application[23]) originally read as follows:

> A system for compounding a plurality of selected mixtures comprising:
>
> means for storing sets of parameters for a plurality of mixtures to be compounded from a group of base solutions;
>
> means for compounding a selected mixture corresponding to a selected set of parameters; and
>
> means for coupling said storing means to said compounding means.

(Ex. D at 2–3.[24]) The Patent Office Examiner ("Examiner") rejected claim 37(40) for two reasons. First, she said that the claim was indefinite, 35 U.S.C. § 112, ¶ 2:

> In claim 37, line 3, again it is unclear what the "sets of parameters" are and how

---

22. Neither party explores the prosecution history of claim 67 in any detail and I do not find it necessary to do so. *Vitronics*, 90 F.3d at 1582 ("The court *may* also consider the prosecution history of the patent, if in evidence.") (emphasis added).

23. In discussing prosecution history, I will refer to claim 40 as claim 37(40) and amended claim 37(40).

24. The exhibits cited in the following subsection are attached to Baxa's Statement of Undisputed Facts filed as a response to Clintec's partial summary judgment motion and in support of its own cross-summary judgment motion viz-a-viz claim 40.

they are inputted into the system. It is also unclear what the "base solutions" are. *In lines 5–6, how is the "selected set of parameters" selected?*

(Ex. A ¶¶ 4, 12) (emphasis added). Second, she rejected claim 37(40) as unpatentable, 35 U.S.C. § 103,[25] over prior art, U.S. Patent No. 4,527,245 (Axelson, Jr., et al.), in view of U.S. Patent No. 3,670,923 (Hawes, Jr. et al.). Elaborating, the Examiner stated as follows:

> Axelson et al discloses an apparatus for compounding substances which includes a programmable controller for receiving the ratio, and or volume parameters to be used in the compounding apparatus. *Axelson et al also teach a control means for selecting which of the substances is to be compounded.* These substances have been presorted and placed in a container to facilitate ease when compounding the final mixture. Instead of presorting the substances as disclosed in Axelson et al. it would be obvious to one of ordinary skill in the art to use a programmable sorting routine, as in the instant invention, within the programmable controller of Axelson et al.

(Ex. A ¶ 18) (emphasis added).

Clintec responded to the Examiner's two objections. In an Amendment letter dated May 12, 1986, Clintec first amended claim 37(40) to address the vagueness concern:

> (Amended) A system for compounding a plurality of selected mixtures to produce individual doses of mixture comprising:
>
> means for receiving sets of parameters for a plurality of mixtures to be compounded from a group of base solutions, one set for each dose:
>
> means for storing said sets and for selecting a set of parameters to be compounded [of parameters for a plurality of mixtures to be compounded from a group of base solutions];

means for compounding a selected mixture corresponding to a selected set of parameters to produce individual doses; and

> means for coupling said storing means to said compounding means.

(Ex. D at 2–3) (new text underlined and old text bracketed in the original).

Second, Clintec did not dispute that Axelson was prior art. Rather, implicitly acknowledging that it was prior art, Clintec stated that

> all of the claims have been rejected under 35 U.S.C. § 103 as being unpatentable over Axelson, Jr. et al. in view of Hawes, Jr. et al. The scope and content of the Axelson, Jr. et al. reference includes the teaching that a plurality of commodities such as various types of feed grains can be blended together to produce a final product which consists of a selected percentage of each of the commodities used to make the blend. The percentage of commodity used to make the blend is controlled by a computer which selectively opens various gates a desired amount to allow a selected amount of each commodity to flow through a chute into a grain bin.

(*Id.* at 6.) [26]

Clintec next distinguished the amended claim 37(40) from Axelson in the following manner:

> the claimed invention, as claimed in Claims 1, 19, *37 [, which issued as claim 40]*, 67, 87, and 93, *requires* that a plurality of sets of parameters of mixtures be provided and that these parameters are *sorted in accordance with the particular base solutions used to make each mixture and the amount of each base solution included in each set of parameters in order to minimize the number of containers of base solution required to make a plurality of individual doses[.]*

---

25. The statute states, in relevant part, that

[a] patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. 35 U.S.C. § 103(a).

26. Axelson includes "means for selecting the containers whose commodities are to be blended together" and "means for selecting the relative percentages of the commodities to be blended." (Ex. B, col. 1, lines 58–62.)

*(Id.)* (emphasis added). This was the only fashion in which claim 37(40) was distinguished from Axelson. Clintec also stated that other groups of claims were different from Axelson because they required time intervals, or queuing, or printing labels, or other features not found in Axelson. *(Id.* at 6–7.) Clintec concluded that since "[n]one of the differences discussed above are either taught or even suggested by the Axelson, Jr. et al. reference, even given the claims their broadest interpretation suggested by the Examiner," the '010 patent claims "contain allowable subject matter over the Axelson ... reference." *(Id.* at 7.)

The Examiner allowed the '010 patent after Clintec amended claim 37(40) and distinguished it, among others, from Axelson. The Notice of Allowability was "responsive to the Amendment filed May 12, 1986." (Ex. E.) The record shows that the May 12, 1986 Amendment was the only occurrence between the rejection and the allowability. The distinction drawn between Axelson and claims 1, 19, 37(40), 67, 87, and 93 in the Amendment is consistent with the repeated description of the invention in the specification as *sorting mixtures to be compounded so as to minimize the number of source solution containers. (See* '010 patent, col. 2, lines 64–68; col. 3, lines 44–51; col. 8, lines 45–49; col. 8, lines 64–68.)

The prosecution history is part of the "public record of the patentee's claim ... on which the public is entitled to rely ... [in order to] ascertain the scope of the patentee's claimed invention and [to] design around" it. *Vitronics,* 90 F.3d at 1583. In this case, based on the prosecution history, a reasonable competitor would be entitled to conclude the following: (1) the Examiner rejected claim 37(40) as unpatentable over pri-

or art because the Axelson patent taught use of a computer to select which substances to compound; [27] (2) Clintec acknowledged that Axelson was prior art; [28] (3) Clintec distinguished Axelson from the amended claim 37(40) on the basis that the latter required sorting to minimize the number of containers of base solutions; (4) the Examiner allowed the amended claim 37(40) based on Clintec's amendment and explanation; and (5) the term "selecting" in claim 37(40), therefore, means the same as the term "sorting" in claims 1, 19, 87, and 93.

**Clintec's Arguments**

Clintec maintains that "selecting" is not the same as "sorting," but "means to pick or choose a set of parameters (i.e. formula) out of a sequence of formulas entered into the system by preference, such as for an emergency." (Pl.'s 12(M) Statement ¶ 37.) Relying on their dictionary definitions, Clintec argues that "sorting" and "selecting" have different meanings. However, as discussed above, the words are synonymous. The portion of the specification which describes the kind of "selecting" to which Clintec refers, (Pl.'s 12(M) Statement ¶ 37; ('010 patent, col. 4, lines 18–21; col. 10, lines 31–58), does not use the word "selecting." Indeed, the context of the only place in the specification in which "selecting" does appear suggests the meaning attributed to it by Baxa, i.e., sorting to minimize the number of source solution containers. *See supra;* ('010 patent, col. 3, lines 3–13.)

Relying on *Tandon Corp. v. United States Int'l Trade Comm'n,* 831 F.2d 1017 (Fed.Cir. 1987), Clintec says that different words in claims are presumed to have different meanings. Although *Tandon* does make this statement, *id.* at 1023, it immediately follows with another: "practice has long recognized

---

**27.** Clintec points out that the Examiner also found other differences between Clintec's various claims and Axelson. This is correct. However, this fact is irrelevant.

**28.** Clintec argues that Axelson is not prior art because it pertains to grains, not pharmaceuticals. Clintec cannot make this argument now. First, he did not make it in response to the Examiner's rejection. Second, in a Preliminary Amendment, dated February 14, 1985, Clintec cited numerous references to the Examiner in its

Preliminary Amendment and Information Disclosure Statement ("IDS"), (Ex. C), that did not involve pharmaceutical compounding. In the IDS, Clintec said that "[e]ach of the above-identified systems is believed to be pertinent to the pending application in that each discloses a form of mutlicomponent mixing system." *See Ekchian v. Home Depot, Inc.,* 104 F.3d 1299, 1304 (Fed. Cir.1997) ("hold[ing] that statements made in an IDS can be the basis for a court to interpret the scope of the claims").

that claims may be multiplied ... to define the metes and bounds of the invention in a variety of different ways. (cites omitted) Thus two claims which read differently can cover the same subject matter." *Id.*

Clintec also relies on the doctrine of claim differentiation. Under this doctrine, "interpretation of a claim should be avoided if it would make the claim read like another one." *Autogiro Co. of Am. v. United States,* 181 Ct.Cl. 55, 384 F.2d 391, 404 (1967). Clintec points out that claim 62, which depends upon claim 40, includes "means for sorting authorized parameter sets." Thus, the plaintiff says that claim 40 cannot likewise include a "sorting" limitation. However, "[a]lthough the doctrine of claim differentiation may at times be controlling," it is trumped if the "definition [at issue] ... is otherwise clear from the claim language, [the specification]; and [the] prosecution history" *O.I. Corp. v. Tekmar Co. Inc.,* 115 F.3d 1576, 1582 (Fed. Cir.1997); *see also Autogiro Co. of Am.,* 384 F.2d at 404 ("Claim differentiation is a guide, not a rigid rule. If a claim will bear only one interpretation, similarity will have to be tolerated."). Such is the case here.

Clintec attempts to invoke the testimony of its expert, Mr. Uhen. However, in cases such as this one, "where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence[, such as expert testimony,] is improper" because the public is entitled to rely on the public record. *Vitronics,* 90 F.3d at 1583.

Clintec insists that what Baxa is doing is improperly injecting into claim 40 a "sorting" element appearing in the prosecution history. Clintec says that Kay Hannafan, the attorney prosecuting the patent application, simply made a mistake when she stated that claim 37(40) required sorting. Clintec relies on *Intervet Am., Inc. v. Kee–Vet Laboratories, Inc.,* 887 F.2d 1050 (Fed.Cir.1989), this court's opinion in *Viskase Corp. v. American Nat'l Can Co.,* 947 F.Supp. 1200 (N.D.Ill. 1996), and *International Rectifier Corp. v. Sgs–Thomson Microelectronics Inc.,* 38 U.S.P.Q.2d 1083 (C.D.Cal.1994).

In *Intervet* the prosecution history was as follows: responding to the second Patent Office action, the attorney prosecuting the patent application sought to distinguish his invention from the prior art on the basis that, unlike the prior art which required two vaccinations, his invention required only one. In the third Patent Office action, the Examiner pointed out that the claims were not expressly limited to a single vaccination which would patentably distinguish them from the prior art. In response, the attorney amended only three of the claims to refer to a single vaccination. In the "Remarks" accompanying the amendment, however, the attorney said that all claims were restricted to a single vaccination. The attorney subsequently admitted that the "Remarks" statement was incorrect. 887 F.2d at 1053–54.

The court held that

[w]hen it comes to the question of which should control, an erroneous remark by an attorney in the course of prosecution of an application or the claims of the patent as finally worded and issued by the Patent and Trademark Office as an official grant, we think the law allows for no choice. The claims themselves control.

*Id.* at 1054.

The court acknowledged that

[t]here are ... situations in which what an attorney says or does during prosecution may be held against a patentee.... For example, when a patentee attempts to *expand* the literal meaning of a claim ... and the prosecution history shows that the expanded scope would be inclusive of subject matter the attorney had represented to the examiner was *not* intended to be included in order to get the claim allowed, the patentee may be estopped to contend otherwise.

*Id.* (emphasis in the original). The court concluded that the instant case was different because "the patentee was granted broad claims *in spite* of the statement by the attorney that he was amending them, though he never did so." *Id.* (emphasis added). The court pointed out that "[t]he examiner was not misled or deceived[ because] [t]he erroneous remark was not the end of the prosecution." *Id.* There were two telephone

interviews between the attorney and the examiner, the examiner made two "examiner's amendments," and the absence of the "single vaccination" limitation in all but three claims "may very well have been discussed." *Id.*

The present case is different. In *Intervet* three claims were expressly limited to one vaccination, while the others were not. The *Intervet* court did not have to interpret an existing term. The *Intervet* court itself acknowledged the difference between "interpreting what is *meant* by a word in a claim[, which is proper via reliance on the prosecution history,] . . . [and] adding an extraneous limitation appearing in the [prosecution history], which is improper." *Id.* at 1053 (emphasis in the original); *Vitronics*, 90 F.3d at 1582 (in interpreting claim, "the court may also consider the prosecution history of the patent, if in evidence"). In addition, unlike the *Intervet* attorney, Ms. Hannafan amended claim 37(40) in response to the Examiner's vagueness, not patentability, concern. Then, in response to the Examiner's patentability objection, she explained how the amended claim 37(40) differed from the prior art, thereby defining "selecting." Unlike in *Intervet* there is no evidence of further contact between the Examiner and Ms. Hannafan, during which the Examiner could have acquired a different understanding than that conveyed by the May 12, 1986 Amendment. Unlike *Intervet*, the only logical conclusion is that the Examiner allowed claim 37(40) because of Ms. Hannafan's explanation, not *in spite* of it. *See Intervet*, 887 F.2d at 1054.

Clintec insists that the Examiner knew that "selecting" and "sorting" had different meanings, *see id.* ("The examiner was fully aware of what claims he was allowing."), and that Ms. Hannafan's error would be obvious to anyone perusing the prosecution history, *see Southwall Technologies*, 54 F.3d at 1578

(competitors "must be able to rely on the patent documents[, including prosecution history,] . . . in ascertaining the scope of a patentee's right to exclude"), because (1) neither the original nor the amended claim 37(40) contained the term "sorting;" (2) prior to the May 12, 1986 Amendment, the Examiner demonstrated that she knew the difference between "selecting" and "sorting;" (3) Clintec amended the original claim 37(40) to add a "selecting," not a "sorting," function; and (4) the Examiner did not require Clintec to further amend claim 37(40) to include a "sorting" limitation. However, these statements are unresponsive to Baxa's argument, i.e., that in the one and only response by Clintec to the rejection of its patent, Clintec (through Ms. Hannafan) effectively defined "selecting" as "sorting," thereby shaping the Examiner's and the public's understanding of the meaning of that word.[29]

In *Viskase v. American Nat'l Can Co.*, also relied upon by Clintec, the issue was the meaning of the term "about" as used in the phrase "a density below about 0.91 g/cm$^3$." The plaintiff argued that it meant a number between 0.905 and 0.914. The defendant argued that it meant 0.910. 947 F.Supp. at 1202. One of the defendant's reasons was that in a letter sent to the Patent Office after the plaintiff's patent had been allowed, the plaintiff's attorney stated that the patent "does not have a density below about *0.9102 g/cm$^3$.*" *Id.* (emphasis added). Following *Intervet*, this court disregarded the attorney's statement because "in no other place in the prosecution history did Viskase use a third decimal point," *id.*, the attorney used the word "about," suggesting numbers "slightly above and slightly below," *id.* at 1201, "the [E]xaminer certainly knew that the claims themselves included broader language than the limitation of 0.910,"[30] and

**29.** Clintec relies on the fact that, prior to the May 12, 1986 Amendment, regarding claim 37(40), the Examiner asked "how is the 'selected set of parameters' selected?," while with respect to claim 87, she asked "[h]ow is the sorting accomplished?" (Ex. A at ¶¶ 12, 13.) However, the unamended claim 37(40) recited "means for compounding a selected mixture corresponding to a *selected set of parameters*," while the unamended claim 87 recited "*sorting* the sets of parameters in accordance with the types of base solutions included in each said set." (Ex. D at

2–3, 4) (emphasis added). The Examiner rejected the above claims, among others, for vagueness. Obviously, in seeking clarification of vague terms, she would have posed the question using the words whose meaning was unclear. One cannot surmise from this that the Examiner knew that "selecting" and "sorting" meant different functions.

**30.** This statement was based on the court's earlier observation that the Examiner said that the plaintiff "clearly . . . intended to claim below

"the Examiner did not require an amendment." *Id.* at 1202.

The present case is different. By limiting "about 0.91" to "0.910," the defendant was advocating a construction contrary to the term's "ordinary dictionary definition" and to its understanding by "persons skilled in the art." *Id.* The Examiner in the present case did not indicate that she differentiated between "sorting" and "selecting." *See supra.* The term "sorting" appears more than once in the prosecution history because Clintec's Ms. Hannafan used it to distinguish claims 1, 19, 37(40), 67, 87, and 93 from Axelson. *See supra.* In addition, the specification abounds with the term "sorting," in contrast to "selecting." *See supra.* Finally, it is not surprising that the Examiner in this case did not require a further amendment of claim 37(40) since she had been provided with the definition of "selecting" by the May 12, 1986 Amendment.

In the third case relied on by Clintec, *International Rectifier,* the attorney "plainly wrong[ly]" distinguished prior art. The court concluded that the Patent Office must have "found other grounds on which to distinguish [prior art] and did not rely on the erroneous statement made by counsel." 38 U.S.P.Q.2d at 1091. Clintec cites this case in support of its contention that the Examiner must have distinguished claim 37(40) from Axelson on grounds other than those represented by Ms. Hannafan. However, Ms. Hannafan's explanation that "selecting" in claim 37(40) required sorting to minimize the number of source solution containers would not have appeared "plainly wrong," *see id.,* to the Examiner who herself rejected claim 37(40) as unpatentable over Axelson.

 I conclude, therefore, that the meaning of "selecting" in claims 40 and 67 is identical to that of "sorting" in claims 1, 19, 87, and 93. Since there is no genuine issue of material fact that Baxa's compounders employ the identical or equivalent structure for "sorting" as that disclosed in the '010 patent,

*see supra,* there can be no literal infringement of claims 40 and 67. *Carroll Touch,* 15 F.3d at 1578 (literal infringement of means-plus-function element requires that accused device (1) perform identical function and (2) do so with identical or equivalent structure). Accordingly, Baxa's summary judgment motion on literal infringement and cross-summary judgment motion viz-a-viz claim 40 are granted. Clintec's summary judgment viz-a-viz claim 40 is denied.

## II. Infringement under the Doctrine of Equivalents

 Under the doctrine of equivalents,

> a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is "equivalence" between the elements of the accused product or process and the claimed elements of the patented invention.

*Warner–Jenkinson,* 520 U.S. at ——, 117 S.Ct. at 1045. The issue is whether "the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention[.]" *Id.* at ——, 117 S.Ct. at 1054. The "role played by each element in the context of the specific patent claim" must be compared to a substitute element in the accused device to determine whether the latter "matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element." *Id.* "To establish infringement under the doctrine of equivalents, every claim element must be present in the accused device, either exactly or by an equivalent." *Storer v. Hayes Microcomputer Prods., Inc.,* 960 F.Supp. 498, 503 (D.Mass.1997) (citing *Warner–Jenkinson Co.,* 520 U.S. at ——, 117 S.Ct. at 1054).

 At issue is the "sorting" function element,[31] whereby the host computer

0.91," and that the plaintiff's claims included "density of from about 0.86 to about 0.91." *Viskase,* 947 F.Supp. at 1201.

**31.** The "selecting" function element in claims 40 and 67 is the same as the "sorting" function

element in claims 1, 19, 87, and 93 for the reasons discussed above. Under the doctrine of equivalents, the court must interpret the claim in the same fashion as under literal infringement, and the prosecution history plays a similar role

("way") sorts solutions to be compounded ("function") to minimize the number of source solution containers ("result"). Clintec has not offered evidence from which a reasonable fact finder could conclude that Baxa's compounders' software performs substantially the same function in substantially the same way. As discussed above, even if there is a factual dispute as to whether Baxa's compounders' software may be used to minimize the number of source solution containers, that result is achieved through the exercise of human judgment. As a matter of law, the exercise of human judgment is not an equivalent of software. *See Davies*, 31 Fed. Cl. at 778–79; *Valley Recreation Prods.*, 36 F.3d 1117, 1994 WL 530818, at *3 (Fed.Cir. Sept.30, 1994) (affirming grant of summary judgment to alleged infringer under doctrine of equivalents, where patented device kept score through operator-activated key pad, whereas accused device did so automatically and without human participation); *see also Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*, 983 F.2d 1039, 1043 n. 2 (Fed.Cir.1993) ("the accused device and the claimed invention cannot work in substantially the same way if a [claim] limitation (including its equivalent) is missing") (quotation omitted).

Clintec says that it is settled that the determination of infringement under the doctrine of equivalents is a question of fact. However, "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment." *Warner–Jenkinson*, 520 U.S. at —— n. 8, 117 S.Ct. at 1053 n. 8.

Clintec also argues that the "pioneering" nature of its invention precludes summary judgment in favor of Baxa. However, Clintec has not cited any authority supporting this proposition.

Finally, Clintec claims that Baxa copied and that it could not have designed around Clintec's compounders. Baxa disputes these contentions. Clintec argues that this dispute precludes summary judgment and cites *Hilton Davis Chem. Co. v. Warner–Jenkinson Co.*, 62 F.3d 1512, 1519 (Fed.Cir.1995). Upon reversing *Hilton Davis Chem.*, however, the Supreme Court greatly de-emphasized the relevance of the alleged infringer's behavior to the primary inquiry under the doctrine of equivalents. *Warner–Jenkinson*, 520 U.S. at ——, 117 S.Ct. at 1052. Accordingly, Baxa's summary judgment motion with respect to the doctrine of equivalents is granted.

## Conclusion

For the reasons stated above, Baxa's summary judgment motion and cross-summary judgment motion are granted. Clintec's cross-summary judgment motion regarding literal infringement of claim 40 is denied. Baxa's summary judgment motion with respect to the doctrine of equivalents is granted as to all '010 patent claims.[32]

---

in the analysis. "When a claim has been narrowed by amendment for a 'substantial reason related to patentability,' such as to avoid a prior art rejection, the patentee may not assert that the surrendered subject matter is within the range of equivalents." *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1573 (Fed.Cir. 1997) (quoting *Warner–Jenkinson*, 520 U.S. at —— ——, 117 S.Ct. at 1049–51) (finding that court's interpretation of claims in light of prosecution

history supported summary judgment in favor of alleged infringer under doctrine of equivalents).

**32.** Baxa's Motion to Supplement Its Reply with *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299 (Fed.Cir.1997), which Clintec opposes, is denied as moot. The court located this case independently. Both parties' motions *in limine* are also denied as moot.